## ROBERT L. JONES v. SHIRLEY A. JONES.

220 N. W. 2d 287.

May 24, 1974—No. 44431.

*Nord, Webster & Brennan, David W. Nord,* and *Richard Baldwin,* for appellant.

*Oppenheimer, Wolff, Foster, Shepard & Donnelly* and *William P. Studer,* for respondent.

Heard before MacLaughlin, Yetka, and McRae, JJ., and considered and decided by the court.

YETKA, JUSTICE.

Appeal from an order of the Family Court Division of the Ramsey County District Court ordering appellant husband to pay as additional child support a debt incurred by the parties prior to their divorce. We affirm.

On November 12, 1971, a decree of divorce was entered granting a divorce to Shirley A. Jones, defendant and respondent in this action, against Robert L. Jones, plaintiff and appellant. Paragraph VI of the original decree of divorce contained the following language:

"That plaintiff, subsequent to the commencement of this action, but preceding the date of this hearing, has filed a Petition in Federal Bankruptcy Court, the defendant, Shirley A. Jones did not join in this Bankruptcy, but since September 1971, the defendant, Shirley A. Jones, has not been contacted by any creditors. Based on this, the matter of responsibility of the debts incurred prior to the commencement of this action will be left open for the Court to decide in the event that the creditors should attempt to collect from the defendant, Shirley A. Jones. This clause is for the purpose of avoiding the possibility of reincurring the debts which are the subject of the Petition in Bankruptcy filed by the plaintiff herein."

The above paragraph was inserted in the decree by reason of a stipulation dictated into the record at the time set for the trial of the divorce, a portion of which stipulation reads as follows:

"MR. NORD [attorney for plaintiff]: All right. As part of the Temporary Order, Mr. Jones was required to pay pre-existing debts prior to the date of the Temporary Order. Subsequently Mr. Jones declared bankruptcy under the laws of the United States. Since his adjudication as a bankrupt no creditor has taken action or threatened to take action against Mrs. Jones, except that the mortgagee of a certain automobile repossessed the automobile without making a personal claim against Mrs. Jones.

"The parties believe that the creditors are unlikely to make further personal claims against Mrs. Jones, but, in order to provide against the event that one of them might, it is stipulated and agreed that the Court may retain jurisdiction, to make such order as may be appropriate for the protection of Mrs. Jones in the event some creditor makes application to her and claims personal liability on her part for any debt pre-existing the date of the Temporary Order.

"Now, does that sum up—

"MR. KIRBY [attorney for defendant]: Did you get in there that the reason we are doing that is to avoid reviving the debts as a new promise?

"MR. NORD: Well, I didn't.

"MR. KIRBY: All right. Put it in there.

"MR. NORD: Okay. It is in there, because Steve was writing.

"MR. KIRBY: Well, I think that does it."

Plaintiff had been discharged in bankruptcy on November 8, 1971. Among the obligations discharged was a debt owed to City and County Employees Credit Union, hereinafter referred to as credit union, in the amount of $2,392.78. Defendant chose not to undergo bankruptcy. Subsequently, the credit union attempted to hold defendant liable on this debt in the amount of $2,778.84, interest included.

Thereafter pursuant to motion by defendant in district court requesting the court to order plaintiff to pay this debt, the district court entered the following order on April 20, 1973:

"1. That, *as and for additional child support,* Plaintiff shall be solely liable for, shall assume the obligation of, and make all payments, including interest, on the joint obligation of the parties owing to the City & County Employees' Credit Union, Credit Union passbook no. 8970, incurred in 1967, as shown in Defendant's list of unsecured creditors, and that he shall hold Defendant harmless therefrom." (Italics supplied.)

Plaintiff appeals from this order claiming that it is unconstitutional because it places a debt burden on him which the Federal court has discharged. Thus he poses the issue of whether the order of the district court directing plaintiff to pay, *as additional child support,* a debt discharged in bankruptcy is in conflict with the Federal Bankruptcy Act and therefore void under the Supremacy Clause of the United States Constitution.

Section 17(a) of the Bankruptcy Act (11 USCA, § 35[a]) provides as follows:

"A discharge in bankruptcy shall release a bankrupt from all his provable debts * * * except such as * * * (7) are for alimony due or to become due, or for *maintenance or support of wife or child * * *.*" (Italics supplied.)

Plaintiff contends that the order of the district court does not fall within the above exception, but rather is in the nature of a property settlement and thus is violative of the Supremacy Clause of the United States Constitution (U. S. Const. Art. VI, cl. 2). Defendant argues that the order was in the nature of child support and, thus, not dischargeable in bankruptcy.

In his reply brief plaintiff also contends the stipulation applied only to appropriate protective orders. Citing Boykin v. Alabama, 395 U. S. 238, 89 S. Ct. 1709, 23 L. ed. 2d 274 (1969), he further asserts that the stipulation was not an effective waiver

of his constitutional right to have his debts discharged in bankruptcy.

We hold that plaintiff's position is untenable. First of all, he clearly stipulated in open court following his discharge in bankruptcy that the court could retain jurisdiction to make such orders as may be appropriate for the protection of Mrs. Jones in the event a creditor of the parties attempted to collect from her. Secondly, even if plaintiff could properly raise the validity of the stipulation, the court clearly had retained jurisdiction to amend its original decree for child support. Minn. St. 518.17, 518.18, 518.64. Thus, the lower court had a statutory right to make such orders as the circumstances might require.

The case of Audubon v. Shufeldt, 181 U. S. 575, 21 S. Ct. 735, 45 L. ed. 1009 (1901), recognized and firmly established that the duty of a husband to *support* his wife and children could not be discharged in bankruptcy. Cases arising under the "support exception" of the Bankruptcy Act have thus turned on the nature of the obligation, i. e., support or property settlement. In determining the nature of the debt in question, "the court may look behind the judgment to ascertain the true nature of the claim or obligation." Hylek v. Hylek, 53 F. Supp. 657, 658 (N. D. Ind. 1944), affirmed, 148 F. 2d 300 (7 Cir. 1945). In Erickson v. Beardall, 20 Utah 2d 287, 437 P. 2d 210 (1968), the court looked to the substance of the award in its determination of whether or not it was for support. In Treece v. Treece, 458 P. 2d 633, 635 (Okla. 1969), the court employed the following test:

"It appears that in deciding whether the obligation is exempt from bankruptcy, the question turns on whether the obligation is substantially one for alimony, maintenance or support of the spouse or children. If it is such an obligation, then it is not dischargeable regardless of the term by which the obligation is described.

"* * * We think it is relevant in each instance to examine the circumstances surrounding assumption or imposition of the obligation upon the husband."

Returning to the case at bar, plaintiff argues that the divorce decree fits neatly into the three categories of support, alimony, and property division, thus compelling construction of Paragraph VI as a property settlement provision. However, an examination of the decree compels no such *neat* construction. Paragraph VI deals with payment of debts and is not labeled as child support or as a property settlement. Likewise there are no specific labels for the other categories contained in the decree.

The following cases have considered the question of whether assumption of prebankruptcy debts by the bankrupt was in the nature of support or alimony. Perhaps the leading case in this area is Poolman v. Poolman, 289 F. 2d 332 (8 Cir. 1961). That case involved a divorced husband who agreed to keep up payments on a trust deed to the house where his wife and children resided. In holding this obligation not discharged in bankruptcy, the court stated:

"* * * It is safe to say that the obligation to maintain and support a family includes the obligation to keep a roof over their heads." 289 F. 2d 335.

In re Baldwin, 250 F. Supp. 533 (D. Neb. 1966), extended the Poolman rationale to include payments on debts which secured furniture and an automobile awarded to the wife. The court there said:

"* * * While these items may not be quite so basic as a roof over the wife's head, they partake of the same nature." 250 F. Supp. 534.

In accord with Baldwin is Collins v. Smith, 26 Ohio Misc. 231, 270 N. E. 2d 377 (Ct. of Comm. Pleas, Scioto County, 1971).

In Remondino v. Remondino, 41 Cal. App. 2d 208, 214, 106 P. 2d 437, 441 (1940), the court set forth the following test:

"* * * If, upon a consideration of the entire transaction the court determines that the purpose of the judgment for support money is to guarantee the *economic safety* of the wife by the hus-

band, then his discharge in bankruptcy does not affect his liability under the judgment." (Italics supplied.)

Perhaps the case most similar to the facts and issue of the case at bar is Nesbit v. Nesbit, 80 N. Mex. 294, 454 P. 2d 776 (1969). This case involved a divorce decree which required the husband to pay a specified sum for child support and also to pay the community debts. Subsequent to the divorce, the husband was adjudged bankrupt. In determining whether or not the order to pay the community debts was in the nature of support and maintenance of the wife and children, the court stated:

"* * * An order to pay the community debts may be in the nature of an award of alimony or support money not dischargeable in bankruptcy. * * * The answer turns on whether the requirement was made as a part of a determination by the court of the amount reasonably required as support and maintenance for the wife and children. If such was the purpose and intent, it was exempt from discharge. If, on the other hand, it was a part of a property settlement, it was discharged. [Citations omitted.] * * * It would seem to be obvious that if the community debts are not paid by appellee, they will remain as obligations of appellant, and any amounts she is required to pay on them would necessarily result in a reduction in the support money decreed and available for support of her children. A determination must be made as to whether the decree entered in the divorce proceeding required appellee to pay the community debts as a part of a division of property between the parties or as a necessary element in connection with the support and maintenance due the children. This is properly a function of the trial court in the first instance. [Citations omitted.]" 80 N. Mex. 296, 454 P. 2d 778.

The district court in its order for payment of debt specifically determined that such payment was for additional child support. The stipulation and joint debt provisions of the decree do not specify the nature of these payments as either support or property settlements. There is no reason to doubt the correctness of

the district court's designation of the order as additional child support. The court had every right to look at the entire financial circumstances of the parties, and particularly that of the wife and the minor children, and if defendant suddenly were faced with the necessity of paying a large debt, it clearly would affect her ability to support the children, thus requiring an increase in her support payments. It is not difficult to assume that imposition of a debt of $2,778.84 upon defendant, whose net income is only $350 per month, would indeed result in a reduction of the portion of her income that either directly or indirectly would benefit the three children in her custody.

Thus, there is ample factual, judicial, and statutory authority to find that the order for payment of debt was in all respects proper and not in conflict with the Bankruptcy Act by virtue of the support and maintenance exception.

Both parties cite Perez v. Campbell, 402 U. S. 637, 91 S. Ct. 1704, 29 L. ed. 2d 233 (1971). However, the Perez case does not deal with the support and maintenance exception (cited *supra*), and is therefore irrelevant to the issue before the court. The same holds true for Kesler v. Dept. of Public Safety, 369 U. S. 153, 82 S. Ct. 807, 7 L. ed. 2d 641 (1962); and Reitz v. Mealey, 314 U. S. 33, 62 S. Ct. 24, 86 L. ed. 21 (1941), both overruled by Perez but also cited by the parties.

Plaintiff also argues that Boykin v. Alabama, 395 U. S. 238, 89 S. Ct. 1709, 23 L. ed. 2d 274 (1969), precludes application of Paragraph VI of the divorce decree because the waiver of his right to discharge of his debts did not meet constitutional standards. This argument must fail for the following reasons:

(1) Under Minn. St. 518.17, 518.18, and 518.64, the district court had the power to order additional child support even in the absence of Paragraph VI so long as said order did not violate the Bankruptcy Act.

(2) Even assuming that the district court's power to order additional child support rested solely on Paragraph VI, reliance on Boykin v. Alabama, *supra,* is misplaced. Boykin involved the

entrance of a guilty plea to criminal charges which carried a maximúm penalty of death. The guilty plea amounted to a waiver of the accused's rights to confrontation, jury trial, and freedom from self-incrimination. The trial judge in Boykin asked no questions of the accused concerning his entrance of his plea. The Supreme Court simply refused to allow such a waiver of basic constitutional rights to stand on the basis of a silent record.

In contrast, in the case at bar plaintiff was represented by experienced counsel throughout the entire proceedings. The stipulation in question was the result of careful negotiation between the parties. This is a far cry, indeed, from a trial court's acceptance of a guilty plea to a capital offense without asking the defendant a single question regarding his understanding of the grave effects of entering such a plea.

The order of the lower court is affirmed.