In re the Marriage of John Warren
MEYERS, petitioner, Appellant,

v.

Harriet Mae MEYERS, Respondent.

No. C9–86–1810.

Court of Appeals of Minnesota.

July 21, 1987.

William L. Stockman, Stockman, Sullivan
& Sadowski, Coon Rapids, for Appellant.

Harriet Mae Meyers, pro se.

Heard, considered and decided by
LANSING, P.J., and HUSPENI and
RANDALL, JJ.

## OPINION

RANDALL, Judge.

John and Harriet Meyers were divorced
in 1981. In the same year, John Meyers
moved to have maintenance stricken because he lost his employment. The motion
was denied. In April 1986, John Meyers
moved the Crow Wing County Court for an
order amending the judgment of dissolution to eliminate his maintenance obligation. The trial court denied the motions
for elimination of maintenance. John Meyers appeals. We affirm.

## FACTS

The Meyers were married in 1948. Their
marriage was dissolved in 1981, after almost 33 years. The dissolution was pursuant to the parties' stipulation.

Appellant John Meyers agreed to pay
respondent Harriet Meyers $300 per
month, one half of his navy pension, as
maintenance. In case of an increase in
appellant's pension, maintenance was to increase by one half of the pension increase.
For the first years after the dissolution,
appellant did not make the court ordered

maintenance payments. Respondent now receives the $300 monthly directly from the navy.

At the time of the dissolution, respondent was not employed outside the home. She completed her GED after the dissolution. Respondent commenced employment while the dissolution was pending. Appellant had a bachelor's degree in criminal justice and community service. He was employed with Rural Minnesota Concentrate Employment Program and was earning $1303 gross monthly, in addition to approximately $600 in navy pension.

The parties owned real property with $20,000 in equity. They stipulated that appellant would buy out respondent's interest in the property. In full settlement of respondent's interest, appellant agreed to pay her $10,000.

Respondent invested the $10,000 in a contract for deed, on which she receives $158 per month. She will continue to receive that amount for approximately seven more years. She has about $3000 in a savings account.

For the past two and one half years, respondent was employed at a Minneapolis picture framing company, where she earned $5.75 per hour. At the time of the hearing, she had been laid off for the summer, but she expected to return to work in September. Respondent was laid off in April. She had been laid off from May to September the previous summer.

In addition to her work at the picture framing company, respondent makes dolls and sells them at craft shows. Her income from this source totaled about $650 between the beginning of 1986 and the time of the hearing, April 11, 1986. Respondent's claimed living expenses are $717.

Respondent has CHAMPUS medical insurance, in addition to a small policy that covers $125 per month for hospitalization. At the time of the trial court hearing, respondent had osteoarthritis of the hip. Respondent expected at the time of the hearing, that she would need surgery.[1]

Appellant lost his job with Rural Minnesota in April 1981. He then started to work for ARA publications. The job lasted only three weeks because appellant had problems due to a service related back injury. Appellant also went to real estate school and started to work for a real estate agency, but made no sales. Appellant was unemployed from April 1981 to January 1982. He received unemployment compensation at that time.

Since January 1982, respondent has held numerous temporary and part time jobs. In April 1985, appellant sold his house. In May 1985, appellant filed bankruptcy. In October 1985, he moved to Minneapolis to find work.

Since his move to Minneapolis, appellant has had a heart attack and urinary tract infections connected with a prostate problem. At the end of March 1986, appellant started to work for a convenience store, but had to quit after four weeks due to chest pains. Appellant is now looking for work and does occasional temporary work.

Appellant's navy pension has increased from $600 at the time of the dissolution to $890. His expenses have risen, also. Appellant lives in his fiance's basement. He pays her $300 per month rent. His fiance does some of his cooking and does his laundry. Appellant occasionally brings home some groceries. Appellant and his fiance have plans to marry. Appellant has some nominal savings in a bank.

Appellant claims he owes $7000 for medical expenses not covered by insurance. Appellant claims $464.74 for monthly living expenses, in addition to food, clothing, entertainment, medical bills and $45 per month for medication. In 1981, the year of the dissolution, appellant's total monthly expenses, including $300 maintenance, were $1,513.91.

1. Respondent has informed this court that she has, in the meantime, undergone hip replacement, and that her bills, after allowing for insurance, were approximately $2000. This information was not before the trial court, and therefore is not part of the record considered on appeal.

## ISSUES

1. Did the trial court err by denying appellant's motion to eliminate maintenance?

2. Did the trial court err by granting respondent $200 attorney fees?

## ANALYSIS

### I.

#### Increase in Maintenance

A trial court has broad discretion to determine spousal maintenance and its decision will be affirmed if it has a reasonable and acceptable basis in fact. *Peaslee v. Peaslee*, 400 N.W.2d 447, 448 (Minn.Ct.App. 1987) (citing *DuBois v. DuBois*, 335 N.W.2d 503, 507 (Minn.1983)). Likewise, the decision to modify maintenance is in the sound discretion of the trial court, and will not be reversed except upon a clear showing of an abuse of discretion. *Fitch v. Fitch*, 298 Minn. 529, 530, 213 N.W.2d 925, 927 (1974). In order for this court to find the trial court abused its discretion, there must have been a clearly erroneous conclusion that is against logic and the facts on record. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984).

Appellant moved to eliminate maintenance pursuant to Minn.Stat. § 518.64, subd. 2 (1986) which states, in pertinent part:

> The terms of a decree respecting maintenance or support may be modified upon a showing of one or more of the following: (1) substantially increased or decreased earnings of a party; (2) substantially increased or decreased need of a party; * * * (4) a change in the cost-of-living for either party as measured by the federal bureau of statistics, any of which makes the terms unreasonable and unfair. On a motion for modification of maintenance, the court shall apply, in addition to all other relevant factors, the factors for an award of maintenance under section 518.552 that exist at the time of the motion.

■ In order for the trial court to modify an award of maintenance, the moving party must show both a substantial change in earnings or need and unfairness of the existing obligation as a result of the change. *Savoren v. Savoren*, 386 N.W.2d 288, 291 (Minn.Ct.App.1986).

Here the parties originally stipulated to the maintenance of one half of appellant's navy pension. The courts are generally hesitant to interfere with such a stipulation.

> The fact that the financial rights and obligations of the parties have been fixed in the divorce decree as a result of stipulation is an important consideration restraining, although not controlling, the court's authority.

*Kaiser v. Kaiser*, 290 Minn. 173, 180, 186 N.W.2d 678, 683 (1971). *See also Halvorson v. Halvorson*, 402 N.W.2d 168 (Minn. Ct.App.1987) (stipulation is not binding on court, but trial court should exercise discretion carefully and only reluctantly alter terms of stipulation). However,

> the trial court need not rely on the stipulation because trial courts retain their jurisdiction to amend maintenance and child support awards as the "circumstances might require." *Jones v. Jones*, 300 Minn. 182, 186, 220 N.W.2d 287, 290 (1974).

*Coakley v. Coakley*, 400 N.W.2d 436, 440 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. April 23, 1987).

■ Appellant argues the trial court should have found his maintenance obligation to be unreasonable and unfair under § 518.64. We agree with the trial court that, by themselves, the changes in the parties' circumstances do not render the original maintenance award unreasonable or unfair.

Appellant contends the stipulated amount of maintenance has become excessive because the reduction of his gross income, $1903 at the time of the dissolution to $890 at the time of the modification hearing, is a substantial decrease under the statute. Meanwhile, he claims respondent's income increased substantially.

Respondent was not employed at the time of the dissolution, but started to work

outside the home shortly thereafter. At the time of the hearing, however, respondent was not working due to a seasonal layoff. Her only income aside from the $300 maintenance was the money she made selling dolls (about $200 per month).[2] Her income, including maintenance, thus still falls short of the $879 she lists as living expenses. The trial court found her needs have increased since the time of the dissolution. Appellant does not challenge this finding.

Appellant contends his needs have increased. However, his claimed monthly expenses in 1981 amounted to $1,663.91, including the $300 maintenance payment. Presently appellant's claimed needs are only $464.74, excluding food, transportation, entertainment, clothing, medical expenses, medication, and maintenance. He does not indicate how much he spends per month for the items not included in the $464.74.

We affirm, finding that the discretion accorded the trial court on the issue of maintenance was not abused. We sympathize with appellant and acknowledge that he produced a good faith argument. His health has deteriorated since the dissolution, limiting his ability to perform certain types of work, and his income and his earning potential, thus, has been reduced. His medical expenses have increased. Appellant lost the job he had at the time of the dissolution, and is looking for work.

We recognize that both parties lack sufficient income at this time to meet basic needs. Respondent has taken a reasonable approach during this matter. Under the terms of the decree, she is entitled to one half of appellant's pension, including any increase. Respondent could enforce the specific wording of the decree and ask for a monthly increase in maintenance of $145 for a total of $445 (50%). She does not seek that increase, nor does she seek back payments for maintenance that appellant

failed to make in the first years after the dissolution.

Appellant contends "[t]his case is extremely analogous to the facts and logic" of *Beckstrom v. Beckstrom*, 385 N.W.2d 402 (Minn.Ct.App.1986). We disagree. In *Beckstrom*, the respondent was the one to move for continued maintenance, and she therefore had the burden to show change in circumstances and unfairness. *See Savoren*, 386 N.W.2d at 291 (moving party must demonstrate both a substantial change and unfairness of the existing obligation as a result of the change). Respondent was awarded two thirds of the marital assets, including the marital home with $68,000 equity, and $200 monthly maintenance. Appellant received $37,125 worth of marital property, $22,450 of which was his pension. After appellant retired, respondent moved to continue spousal maintenance. At that time appellant's monthly income was $751 and respondent's income was $627. The appellant had virtually no assets, save the pension. This court reversed an award of $100 to respondent on the basis of appellant's inability to pay.

*Beckstrom* is not controlling. Here appellant bears the burden of proof, as he brought the motion. Neither party was awarded substantial assets. The modest $20,000 equity in the home was divided equally. Neither party really has sufficient income to independently meet their needs.

On these facts, we do not disturb the trial courts conclusion that the original award of $300 per month maintenance was still reasonable and fair.

## II.

### Attorney fees

The trial court has discretion in awarding attorney fees. Minn.Stat. § 518.14 (1986). An award of attorney fees should not be reversed absent an abuse of discretion.

---

2. The trial court could have, but did not have to consider the $158 respondent receives from her contract for deed when it determined whether her income increased. *See Abuzzahab v. Abuzzahab*, 359 N.W.2d 329, 333 (Minn.Ct.App.1984)

(trial court was within its discretion in disregarding $3300 in interest respondent had earned on property settlement money she had temporarily invested because the source of income was temporary and nonrecurring).

*Bogen v. Bogen*, 261 N.W.2d 606, 611 (Minn.1977).

Appellant contends that here the trial court abused that discretion when it ordered him to pay $200 if respondent's attorney fees, without considering the financial resources of the parties as is required under § 518.14. Appellant claims the trial court had to make findings of respondent's need before awarding her attorney fees. Normally, the trial court should make findings indicating that respondent needed financial assistance to enable her to contest a motion to modify maintenance. Minn. Stat. § 518.14; *Abuzzahab v. Abuzzahab*, 359 N.W.2d at 333. The standard for determining propriety of an award of attorney's fees is "a party's need for financial assistance in order to protect his or her rights in dissolution proceedings." *Frederiksen v. Frederiksen*, 368 N.W.2d 769, 778 (Minn.Ct.App.1985).

Here, the trial court found:

That respondent's needs for maintenance have not diminished since the dissolution, but have increased because of age and inflation.

Additionally, the trial court had evidence of the financial resources of the parties. We hold the court did not abuse its discretion by awarding respondent a nominal $200 for attorney fees.

### DECISION

The trial court did not err by denying appellant's motion for elimination of maintenance.

The trial court did not err by awarding respondent $200 for attorney fees.

Affirmed.