APPLIANCE BUYERS CREDIT CORPORATION, Plaintiff-Appellee, v. ANTHONY J. ZDEB, Defendant-Appellant.

(No. 71-112;

Second District—March 1, 1972.

Mathew P. Cicero, of Rockford, for appellant.

Beckstrand, Ritz & Wham, of Rockford, (Kenneth F. Ritz, of counsel,) for appellee.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

The plaintiff finance company brought this action against the defendant to recover certain funds loaned to him to finance his purchase of television sets and other appliances. The defendant raised as an affirmative defense his discharge in bankruptcy but the trial court found that "\* \* \* the Defendant's conduct demonstrated a wilful and malicious injury by him to property of the plaintiff, and his debt to the plaintiff is therefore not dischargeable in bankruptcy, in accordance with the provisions of Sec. 17 of the Bankruptcy Act of the United States." Judgment in the amount of $26,176.87 was entered in favor of the plaintiff and this appeal followed.

The defendant had been a television and appliance dealer in Loves Park, Illinois under the name of Tony's Electronic Mart from 1959 to the time of his bankruptcy in 1967. In that business, Zdeb sold RCA and Whirlpool television sets as well as radios, air-conditioners and other electronic appliances. The inventory of television sets regularly stocked by Zdeb for display and sale was financed by the plaintiff (called ABCC) under an arrangement known as floor-plan financing. Under their agreement, ABCC would pay the distributors for the merchandise to be inventoried by the dealer for display and sale. The parties executed a written financing agreement whereby Zdeb gave ABCC a security interest in the merchandise thus obtained by him (as well as all of his other inventory) to secure his repayment of the monies advanced. The agreement also provided that Zdeb would "Immediately upon the sale of any chattel \* \* \* pay the proceeds to you to the extent Debtor is indebted to you thereon." ABCC would make regular monthly checks at Zdeb's showrooms and warehouse to inspect and account for the inventory acquired by him and to collect payment for all items already sold.

It appears that business flourished for several years with a peak in 1965 when Zdeb sold 300 to 400 colored television sets. In May, 1967, however, Zdeb paid ABCC $14,000 with a check that was returned marked "not sufficient funds". On June 7, Thomas Hengels, the regular inspector employed by ABCC, and Robert Fowler, his supervisor, returned to Zdeb's store in reference to the bad check. After they received a partial payment by cashier's check, they reinspected the showroom and warehouse located about a block away. In the warehouse, they found about 75 to 100 cartons used to ship and contain colored television sets carefully stacked in rows 3 or 4 high with the serial numbers faced

to the front. A closer inspection of the cartons disclosed, however, that 24 of them were actually empty. The empty cartons had been neatly resealed, with the wooden supports replaced inside, and placed under other, unopened cartons that still held new sets.

Hengels and Fowler returned to the store and advised Zdeb of the empty cartons and demanded immediate payment for the missing sets. Zdeb professed to know nothing of the empty cartons, mentioned the possibility of theft, but was unable to pay for the sets. ABCC immediately instituted a replevin action and recovered the balance of their merchandise. On the same day, Zdeb filed a voluntary petition in bankruptcy and was duly discharged. ABCC was a scheduled creditor in the bankruptcy proceeding.

Section 17 of the Bankruptcy Act (Sec. 35, Title 11, U.S.C.) provides, in part, "(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowed in full or part, except such as * * * (2) are liabilities for * * * wilful and malicious injuries to persons or property of another * * *."

The last reported case in Illinois on the subject is the 1965 case of the *First National Bank of Lansing v. Padjen* (61 Ill.App.2d 310, 314). In that case, the defendant delivered a chattel mortgage to the plaintiff covering certain restaurant equipment to secure a debt. The mortgagee brought suit for the conversion of certain items included in the chattel mortgage by Padjen and he raised his subsequent discharge in bankruptcy as a defense. The facts showed that Padjen did dispose of several items without the knowledge or consent of the mortgagee. The appellate court held that this unauthorized disposition of the chattels was a "wilful and malicious injury to property" within the meaning of Section 17 of the Bankruptcy Act and that the debt was therefore not discharged.

The defendant contends that the *Padjen* case is a poor precedent since it was decided without benefit of argument (Padjen having failed to appear or file a brief) and ignored the Supreme Court case of *Davis v. Aetna Acceptance Company* (293 U.S. 328, 79 L.Ed. 393) wherein Justice Cardozo said, appropos of the same subject, that "* * * a wilful and malicious injury does not follow as of course from every act of conversion * * *."

The *Davis* case, decided in 1931, involved an incident tried and appealed in the state courts of Illinois. Davis was an automobile dealer who borrowed money from Aetna to finance his purchase of automobiles from the manufacturer. He gave Aetna chattel mortgages on the automobiles they financed and agreed not to sell them without their written consent. On August 3, 1929, Davis sold one of the automobiles without the written consent of Aetna but, as the parties stipulated, "* * * with-

out concealment and in the ordinary course of business." It appeared that Aetna was informed of the sale on the same day and had permitted the sale of other automobiles on numerous prior occasions without written approval. Davis filed a bankruptcy petition on September 13, 1929 and raised his discharge as a defense to a subsequent action in conversion brought by Aetna. The trial court made a special finding that Davis was "* * * not actuated by wilful, malicious or criminal intent in disposing of the car in question * * *" but, nonetheless, ruled that the discharge did constitute a bar based on their interpretation of Section 17.

The Supreme Court stated that a conversion of property could be, in some circumstances, "innocent" or "technical", such as where there was "an honest, but mistaken, belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed." The court ruled, logically enough, that a conversion, expressly found to be neither wilful or malicious, could not be considered a wilful and malicious injury to property as described in the Bankruptcy Act.

■■ We would agree with the contention of the defendant, and the *Davis* opinion, that every conversion of property cannot automatically be considered a wilful and malicious injury to the property of another within the intent of Section 17. This is not to say, however, that the *Davis* case cannot be readily distinguished from the cause before us. Here, the trial court expressly found that the defendant did commit a wilful and malicious injury to the plaintiff's property by his unauthorized disposal of the secured merchandise. There is nothing to indicate that the defendant acted under an honest, if mistaken, belief that he was free to dispose of the secured merchandise. The artful concealment practised by the defendant is, of itself, a clear indication that he knew otherwise.

■■ The defendant testified that business conditions had deteriorated in 1966 and 1967 and, as a result of a miscalculation, he had greatly overstocked colored television sets for the Christmas sale of 1966. He stated further that he mortgaged his home, borrowed money from relatives, and made great personal sacrifices in a futile effort to pay his business debts. It is not necessary, however, to prove special or personal malice to come within the exception of the statute. (*Atomatic, Inc. v. Berkun,* 14 Ill.App.2d 60, 63; 9 Am.Jur.2d (Bankruptcy) Sec. 792.) The efforts of the defendant to pay his debts, while perhaps indicative of an absence of personal malice and otherwise laudatory, are not determinative of the issue before us.

The Illinois Commercial Code provides that the disposition of the collateral by a debtor without the consent of the secured will subject

him to possible criminal penalties. Ill. Rev. Stat. 1969, ch. 26, par. 9—306.01; *First Nat. Bank of Lansing v. Padjen,* 61 Ill.App.2d 310, 313. ■■ The facts clearly support the conclusion of the trial court that the secured property had been wilfully disposed of by the defendant. This conversion was wrongful in and of itself and it is apparent that the defendant knew it was wrong. Under these circumstances, it is our opinion that the defendant's conduct constituted a "willful and malicious" injury to the property of the plaintiff within the meaning of Section 17 of the Bankruptcy Act and that the judgment of the trial court was correct.

Judgment affirmed.

MORAN and GUILD, JJ., concur.