385 F.Supp. 1194 (1974)
In re Clarence Lawrence ELLIOTT, Jr., and Mary Johnson Elliott, Bankrupts.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Plaintiff-Appellant,
v.
Clarence Lawrence ELLIOTT, Jr., and Mary Johnson Elliott, Defendants-Appellees.
Nos. 74-124, 74-125.
United States District Court, M. D. Louisiana.
December 16, 1974.
*1195 Donald S. Zuber, Seale, Smith & Phelps, Baton Rouge, La., for plaintiff-appellant, St. Paul Fire & Marine Ins. Co.
William H. Brown, Howell & Brown, Baton Rouge, La., for defendants-appellees, Clarence Lawrence Elliott, Jr. and Mary Johnson Elliott.
E. GORDON WEST, District Judge:
This matter is before this Court on a petition for review of an order of the Referee in Bankruptcy which dismissed an objection to the discharge of the bankrupts, Clarence Lawrence Elliott, Jr. and Mary Johnson Elliott, and which declared a debt of the bankrupts to the St. Paul Fire & Marine Insurance Company to be dischargeable. After seeing and hearing the evidence in this case, the Referee concluded that the objector-complainant had failed to produce facts which would constitute grounds for the denial of a discharge. The Referee also held that the objector-complainant had failed to prove that the bankrupts acted with the malice necessary to constitute a willful and malicious conversion of property, and thus that the bankrupts' debt to objector-complainant is dischargeable. After a careful review of the record in this case, including the able briefs of counsel, this Court concludes that the Referee's findings of fact in this case are not clearly erroneous, and that the order issued by the Referee based on those findings is correct.
The debt involved herein arose originally in connection with a collateral mortgage executed by Mr. and Mrs. Elliott to secure the indebtedness of Clarence L. Elliott to one Singleton Gardner. Gardner sold building materials to Elliott, and pursuant to usual practice, pledged the invoices rendered to Elliott to the American Bank and Trust Company of Baton Rouge in return for cash loans. At some time just prior to November 22, 1972, Mr. Gardner, feeling that he needed additional security, requested that Elliott execute a promissory note, secured by the pledge of a collateral mortgage agreement, in favor of the American Bank and Trust Company of Baton Rouge, in order that he might receive payment on the debt owed him by Elliott. Mr. Elliott consented, and on November 22, 1972, borrowed $26,540 from American Bank with which he paid his debt to Gardner. Elliott executed a promissory note for $26,540, payable on demand to the order of the American Bank and Trust Company, and, at the request of the bank, this note was co-signed by Singleton Gardner. This note was secured by the pledge of a separate note and collateral mortgage agreement, signed by Elliott and his wife. The collateral mortgage agreement covered various tracts of real property in Iberville and West Baton Rouge Parishes owned either by Elliott or by the building corporation of which he was president and owner of sixty per cent of the stock. The collateral mortgage was a second mortgage, as there were already other encumbrances on the property.
It should be noted that appellants do not appeal the ruling of the Referee insofar as it concerned Mrs. Mary Johnson Elliott. The evidence indicated that Mrs. Elliott was legally separated from her husband at the time of the hearing, took no part in his business, and had nothing to do with the acts complained *1196 of other than adding her signature to the mortgage in question.
On January 17, 1973, Elliott conferred with William L. Brown, an attorney, concerning his poor financial position and inability to pay pressing bills. Elliott presented to Brown a list of secured and unsecured creditors, stating that he had signed some mortgages on real estate in favor of the American Bank. Brown advised Elliott to begin liquidating his real estate so that his creditors could be paid.
On February 22, 1973, part of the real estate subject to the collateral mortgage was sold by Elliott, for which he received a net $13,123.89. Elliott told Brown that he was advised by the closing attorney that no second mortgage was recorded. Subsequent investigation by Brown revealed that the collateral mortgage had indeed not been recorded in either Iberville or West Baton Rouge Parish. Upon questioning by Brown, Elliott recalled that the American Bank had required Singleton Gardner's signature before granting the loan. On the strength of this information Brown advised Elliott that no second mortgage existed and that the American Bank had probably advanced the money just on the strength of Gardner's signature.
Thereafter, Elliott worked closely with the First National Bank of Port Allen and its attorney, Fred Belcher, of the firm of McCollister, Belcher, McCleary and Fazio in liquidating his remaining real estate. It was Mr. McCleary of the same law firm who prepared and failed to record the collateral mortgage for the American Bank. Subsequently, on March 28, 1973, Mr. Elliott sold two more parcels of land subject to the unrecorded collateral mortgage.
One year and one day later, on March 29, 1974, Mr. and Mrs. Elliott voluntarily petitioned this Court to be adjudicated bankrupts. Among their scheduled creditors was St. Paul Fire & Marine Insurance Company (objector-complainant herein.) St. Paul is the legal malpractice insurer of the law firm of McCollister, Belcher, McCleary and Fazio. Having paid $24,969.17 to the American Bank in full settlement and compromise of all claims against McCleary for his failure to record the collateral mortgage, St. Paul filed a proof of claim in that amount with the Bankruptcy Court. As evidence of its right to proceed and of its essential position, St. Paul filed in connection with its proof of claim a "release," in which American Bank released its claim against McCleary and agreed to "endorse, transfer, assign and deliver" to St. Paul the original promissory note in the amount of $26,540. St. Paul alleges its status as either a holder in due course, an assignee, or a legal or conventional subrogee of the note.
St. Paul's complaint to determine the dischargeability of debt and objections to discharge presents a difficult question for review; i. e., did the sale by Clarence Lawrence Elliott, Jr. of the three parcels of immovable property which he knew had been mortgaged to American Bank, but which he thought, upon the advice of his attorney, had been freed from that mortgage because of the failure to record it, constitute a "willful and malicious conversion of the property of another" under Section 17 (a)(2) of the Bankruptcy Act, so as to render the debt of Clarence Elliott to St. Paul non-dischargeable.

STANDING
Objections to discharge and complaints to determine dischargeability may be filed by any creditor of the bankrupt as to any debt. 11 U.S.C. 32 (b)(2); 11 U.S.C. 35(c)(1); Bankruptcy Rule 409(a)(1). Although the transcript of the hearing in this matter does not reflect an actual finding by the Referee on the issue of standing, it is obvious that the Referee concluded, as this Court now does, that St. Paul had standing as a creditor to assert its objection and complaint.
As an assignee of the hand note held by American Bank, St. Paul acquired all the rights the bank had with regard to that note, including the right to bring an action to recover the security *1197 lost as the result of the sale by Elliott of lands subject to the collateral mortgage. Appellee's assertion that no accessory existed to be transferred or assigned with the hand note is without merit. The hand note was secured by the pledge of a separate promissory note executed by Mr. and Mrs. Elliott, which itself was secured by and paraphed for identification with a collateral mortgage covering the lands sold by Elliott. This collateral mortgage note represented a secondary debt or obligation of Elliott; the fact that the lands securing its payment had been sold made it no less of a debt or obligation. Such a note is an accessory obligation which is transferred along with an assigned hand note. La.Civil Code Art. 2645 (1870).
Likewise, appellee's contention that St. Paul has no claim to any security inasmuch as it knew the property had been sold disregards the fact that the collateral mortgage note does not die with the failure of its security; it continues to exist as a separate, enforceable obligation. Knowledge of an infirmity in the note, such as the sale of property securing it, raised a defense which prevented St. Paul only from acquiring status as a holder in due course. Such knowledge does not prevent it from exercising whatever rights it may have as a holder or assignee of the note.

THE CONVERSION ISSUE
Section 17(a)(2) of the Bankruptcy Act, 11 U.S.C. 35(a)(2), provides in pertinent part as follows:
"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities . . . for willful and malicious conversion of the property of another . . . ." (Emphasis added.)
What constitutes "willful and malicious conversion" for the purposes of this section has been discussed on numerous occasions in other courts. For instance, the Fourth Circuit Court of Appeals has noted that while every act of conversion is not necessarily "willful and malicious" within the meaning of the statute, "nevertheless if the act of conversion is done deliberately and intentionally in knowing disregard of the rights of another, it falls within the statutory exclusion even though there may be an absence of special malice." Bennett v. W. T. Grant Company, 481 F.2d 664 (4th Circuit, 1973). Likewise, Justice Cardozo in Davis v. Aetna Acceptance Co., 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), stated that "[t]here is no doubt that an act of conversion, if willful and malicious, is an injury to property within the scope of this exception." He went on to note, however, that "a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice. . . . There may be an honest but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a willful and malicious one."
It thus appears that in order for a conversion of another's property to be legally "willful and malicious" for the purposes of Section 17(a)(2), it must be done without his knowledge or consent, intentionally, without justification and excuse, and to his injury. See Collier on Bankruptcy, Vol. 1A, ¶ 17.17 at 1653 (14th ed.), and cases cited therein. Equally notable, however, is the fact that a technical conversion may very well lack any element of willfulness or maliciousness necessary to except the liability from discharge. Id.
Using these criteria, the Referee concluded "after considerable agonizing" that Mr. Elliott's conduct lacked "that degree or quality or standard of maliciousness" that is required to except this liability from discharge. This Court agrees with that conclusion.
*1198 The record in this case indicates that Mr. Elliott's intention in selling the property in question was not to defraud his creditors or to deprive them of security, but to acquire funds to reimburse other creditors of his various business and personal interests in an attempt to keep from declaring bankruptcy. When asked whether he was aware that the property sold was subject to a mortgage to the American Bank, Elliott replied, "Well, supposedly there were mortgages on the property. Mr. Brown checked and they were not recorded. When I sold the property, the mortgage wasn't recorded and, therefore, I feel if you don't have a mortgage if it is not recorded, you don't really have the mortgage." He also stated, "Well, I knew that I signed these notes and these papers and supposedly there was a mortgage which was supposed or should have been recorded, but it was not."
Elliott's erroneous, but good faith, conclusion that no mortgage existed stemmed mainly from advice given to him by his attorney, William L. Brown. Brown testified that he advised Elliott that the American Bank had no mortgage on the property, and that since Singleton Gardner had signed the note, the American Bank was looking to him for payment, rather than to a second mortgage on real estate. Elliott verified the fact that this advice was given him, and that it had a great bearing on his subsequent actions.
Whether or not such advice was correct is not the controlling factor in the matter before the Court. The only question is whether or not a good faith belief in such erroneous advice can preclude the malicious state of mind necessary to render a subsequent conversion of the property of another "willful and malicious." Under the particular circumstances of this case, the conclusion is inescapable that malice was not present.
Note has been taken of the cases cited by appellant for his contention that the debt should not be dischargeable. These cases, however, are readily distinguishable. Aside from the fact that they involved chattel mortgages and not mortgages on real property, a study of these decisions reveals that the conversions in question were committed fraudulently and knowingly in disregard of the rights of others, and not, as here, under a mistaken conclusion of law induced by the erroneous advice of an attorney.
This Court, upon its own independent examination of the record herein, concludes that the objecting creditor, St. Paul Fire & Marine Insurance Company, has failed to show that the bankrupt committed a "willful and malicious conversion of the property of another" under Section 17(a)(2) of the Bankruptcy Act, 11 U.S.C. 35(a)(2). For this reason the Court hereby adopts the report of the Referee, and affirms his dismissal of the complaining creditor's objection to the discharge of Clarence Lawrence Elliott, Jr. and Mary Johnson Elliott and his order holding their debt to St. Paul Fire & Marine Insurance Company to be dischargeable. Judgment will be entered herein accordingly.