HOOD, Judge.
This action was instituted by Electronic Credit Corporation to recover the balance due on nine promissory notes executed by Vidalia Tire Company, a partnership composed of Dr. John H. Fairbanks, and I. J. Thornhill, Jr. The notes were made payable to the order of plaintiff and were secured by chattel mortgages. Defendants are Fairbanks, Thornhill and Vidalia Tire Company. The case was dismissed as to Thornhill, and it went to trial solely on plaintiff’s demands against defendant Fairbanks. The trial court rendered judgment in favor of that defendant, and plaintiff appealed.
*283 The issue presented is whether Fairbanks has been relieved of liability to plaintiff by his subsequent discharge in bankruptcy.
In August, 1965, Fairbanks and Thorn-hill formed a partnership for the purpose of operating a retail tire and appliance store, known as “Vidalia Tire Company,” in Concordia Parish. The partnership operated such a store under the management of Thornhill, from the time the partnership was formed until it was dissolved on August 19, 1968. Fairbanks was engaged in practice as a dentist, and he did not take an active part in managing the Tire Company prior to the above date, his participation in the business before that time being limited to providing financial backing for it. He did not familiarize himself with the operating procedures of the business and he did not monitor its financial affairs while the partnership existed.
Although Fairbanks did not actively participate in managing the business, he did sign a document on August 30, 1965, which authorized Electronic Credit Corporation, or its agents, to execute promissory notes and chattel mortgages for Vidalia Tire Company, evidencing the latter’s indebtedness to Electronic for merchandise to be purchased by it and financed by plaintiff. The parties had agreed that Electronic would finance purchases which Vidalia expected to make from Tri-State Distributing Company, a wholesale distributor, and the purpose of the above power of attorney was to enable Electronic to finance and pay for merchandise bought by the partnership without the necessity of having Fairbanks or Thornhill sign a note and chattel mortgage every time a purchase was made. After the execution of that power of attorney, one of plaintiff’s employees executed a note and chattel mortgage as agent for Vidalia, payable to Electronic, each time the purchase of merchandise was financed by plaintiff. In every such instance the items of merchandise purchased were identified by model and serial number in the chattel mortgage.
The parties understood that under this “floor plan” financing arrangement, the Tire Company could sell the mortgaged merchandise, provided that following each such sale the part of the proceeds which equalled the cost of the item sold would be paid to Electronic and applied to the mortgage indebtedness. Plaintiff adopted the procedure from the beginning of checking the merchandise in the store once a month to determine the items which had been sold that month, and then advising Vidalia as to the amount which the latter owed on the mortgage indebtedness.
The Tire Store made irregular payments on its indebtedness to plaintiff under the above procedure, and plaintiff has not financed the purchase of any merchandise by defendants since February, 1968.
Defendant Fairbanks became aware of the mounting indebtedness of the Tire Company about June or July, 1968. The partnership was dissolved in August, 1968, and Fairbanks then took over the operation of the business in an attempt to extricate it from its financial difficulties. He assumed all of the partnership obligations, and he attempted to raise money to pay them by mortgaging his personal property and by engaging a full time employee to collect the unpaid accounts due the Tire Company. He was unable to salvage the business, however, and he closed it in April, 1969. The company owed plaintiff a balance of $9,089.92 at the time the store was closed.
The Tire Company had from $5,000.00 to $8,000.00 in cash at the time the business was closed. Fairbanks, upon advice of his attorney, used those funds to pay wages and taxes, since they were priority creditors under the Bankruptcy Act. Fairbanks then filed a petition in bankruptcy on April 21, 1969, and he was granted a discharge in bankruptcy on August 1, 1969. He listed his indebtedness to plaintiff Electronic *284 in his bankruptcy schedules, and the discharge which was granted to him purported to release him from liability for that debt.
By this proceeding Electronic seeks to recover judgment against Fairbanks for the balance of $9,089.92 alleged to be due it. That indebtedness is represented by nine promissory notes all executed by Vi-dalia Tire Company, through the agent it appointed as above set out, and made payable to the order of plaintiff. Fairbanks has specially pleaded his discharge in bankruptcy as a defense to plaintiff’s demand. The trial judge concluded that Fairbanks’ discharge in bankruptcy released him from the obligation which forms the basis for this suit, and judgment accordingly was rendered dismissing plaintiff’s suit.
Plaintiff contends that the failure of defendants to apply the proceeds of the sale of the mortgaged items to the indebtedness sued upon her constituted “willful and malicious injuries” to the person or property of Electronic, and that Fairbanks’ discharge in bankruptcy thus did not release him from that obligation.
Plaintiff relies on 11 U.S.C.A. § 35(a)(2), which at the time of defendant’s discharge in 1969 read, in part, as follows:
“(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as .
(2) are liabilities . . . for willful and malicious injuries to the person or property of another.”
The above statute was amended in 1970 to provide, in effect, that a discharge in bankruptcy would not release the bankrupt from liability “for willful and malicious conversion of the property of another.” Prior to the 1970 amendment, however, the term “willful and malicious injury” was interpreted as including “willful and malicious conversion.” Davis v. Aetna Acceptance Company, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). The rules applied by courts before and after the 1970 amendment in determining “willful and malicious conversion” of property, therefore, are applicable here.
 It is not necessary to prove special or personal malice to come within the exception of the statute. See Appliance Buyers Credit Corporation v. Zdeb, 3 Ill.App.3d 1055, 280 N.E.2d 7 (1972); Anderson v. McPhate, 192 So.2d 677 (La.App. 3 Cir. 1966). A willful disregard of that which one knows to be his duty, or the commission of an act which is inherently wrong, if done intentionally, is done “willfully and maliciously” as contemplated by the Bankruptcy Act. See Anderson v. McPhate, supra; Tinker v. Colwell, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904).
Not every act of conversion of secured property is willful and malicious for purposes of the act. Each case must be determined with reference to the circumstances. A conversion which is merely technical or innocent and not accompanied by willfulness or malice does not prevent the discharge of the debt in bankruptcy. Prudential Finance Plan of N.O., Inc. v. Necaise, 192 So.2d 868 (La.App. 4 Cir. 1966). See also Davis v. Aetna Acceptance Co., supra. In order for a conversion of another’s property to be willful and malicious, the act of conversion must be accomplished without the other’s knowledge or consent, intentionally, without justification and excuse and to the injury of the other party. See In Re Elliott, D.C., 385 F.Supp. 1194 (1974).
In Davis v. Aetna Acceptance Company, supra, a retail dealer obtained loans from a finance company to purchase automobiles for resale, and each loan was evidenced by a promissory note secured by a chattel mortgage on the vehicles purchased. In one instance the dealer executed a chattel mortgage in favor of the finance company affecting an automobile, *285 and the parties agreed that the dealer would not sell the car without first obtaining the lender’s written consent. The car nevertheless was sold without the consent of the lender. The sale was not concealed, but on the contrary the dealer notified the mortgagor of it and of his intent to pay the debt. He did not pay the debt, however, and shortly thereafter he instituted bankruptcy proceedings and was granted a discharge. The finance company sued to recover the amount of the loan, and the defendant dealer pleaded his discharge in bankruptcy as a defense. An appellate court of Illinois rendered judgment for the plaintiff, but that judgment was reversed on review by the U. S. Supreme Court.
The U. S. Supreme Court conceded in Davis that conversion, if “willful and malicious,” is an injury to the person or property of another, within the meaning of the above exception to the discharge rule, but it held that in the case there was no showing of willfulness or malice on the part of the bankrupt and that accordingly the debt was discharged. The court said:
“ . . . There may be an honest but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a willful and malicious one
“ . . . The discharge will prevail as against a showing of conversion without aggravated features.”
In Prudential Finance Plan of N.O., Inc. v. Necaise, supra, the defendant discarded and disposed of items of furniture which had been mortgaged to secure an indebtedness to the plaintiff. The defendant’s explanation was that the furniture was old and worthless. The Court of Appeal, Fourth Circuit, held that the discharge in bankruptcy subsequently granted to the defendant released her from liability for the debt, since the discarding or disposal of the furniture did not constitute the “willful injury to the property of and malicious’ another.
The debtor in the case of In Re Elliott, supra, sold three parcels of immovable property prior to his discharge in bankruptcy, knowing that the property had been mortgaged to a bank but that the mortgage had not been recorded. The court held that the creditor failed to show that the bankrupt committed a “willful and malicious conversion of the property of another,” and that the latter’s discharge in bankruptcy thus relieved him from liability. Judgment accordingly was rendered dismissing the creditor’s claim against the bankrupt.
Plaintiff points out that contrary results were reached in Excel Finance Camp v. Tannerhill, 140 So.2d 202 (La.App. 4 Cir. 1962), and Appliance Buyer Credit Corp. v. Zdeb, supra. We distinguish both of those cases.
In Excel Finance, supra, the debtor executed a note in novation of two past due notes owed to Excel. The creditor accepted a chattel mortgage on household effects and furniture in lieu of the personal endorsements which secured the original notes. The debtor thereafter sold the mortgaged household effects and furniture, appropriated the proceeds of the sale to his own use, and then obtained a discharge in bankruptcy. The Fourth Circuit Court of Appeal held that the unauthorized sale of the mortgaged property constituted a “willful and malicious injury to property,” and that the debtor was not released from liability by his discharge in bankruptcy.
In Appliance Buyer Credit Corp., supra, inspectors for the lender found 75 to 100 containers of mortgaged television sets stacked in rows with their serial numbers facing the front. A closer inspection revealed that 24 of the containers were empty, and that they had been carefully resealed to give the appearance that the sets were still in them. The court found nothing to indicate that the defendant acted in *286 an honest belief that he was free to dispose of the secured merchandise, and that the actful concealment practiced by him was a clear indication that he knew otherwise. It held that, the debtor’s action constituted “willful and malicious” injury to the property of the plaintiff, within the meaning of Section 17 of the Bankruptcy Act, and that the debtor’s discharge in bankruptcy did not release him from liability.
The facts in each of the cited cases show that the disposal of the mortgaged property was concealed from the creditor, that the proceeds of the sale were appropriated by the debtor for his own use, that the debtor willfully disposed of the mortgaged property under aggravated circumstances, and that the creditor had never given the debtor any reason to assume that he could dispose of it.
In the instant suit the evidence does not show that sales of merchandise by the Tire Company were ever concealed from plaintiff. Prior to the time Fairbanks began managing the business plaintiff inspected the stock on hand once a month, and it determined from its own inspections how much was owed to it from time to time by the Tire Company. No one knew whether there were any items of mortgaged property in stock when Fairbanks assumed the managment, and no such items were added after that time because plaintiff quit financing the business before Fairbanks took over. There is no showing, therefore, that Fairbanks ever sold an item of merchandise which had been financed by plaintiff.
Fairbanks contacted plaintiff in July, 1968, soon after he discovered that the Tire Company was in financial trouble and before he began managing it, and he discussed the matter with plaintiff at other times after he took over the management. Dr. Fairbanks freely acknowledged his indebtedness to plaintiff, he informed plaintiff of his desire to pay the debt, and our understanding of the evidence is that he kept plaintiff informed of his efforts to borrow money to salvage the business.
The evidence establishes that the amounts received from the sale of merchandise after Fairbanks became the manager were put into the general fund of the store and were used to pay operating expenses and bills of the Tire Company. Fairbanks did not appropriate any part of those funds to his own use, but he, on the contrary, sustained a substantial personal loss as the result of his efforts to pay the Tire Company debts.
The evidence shows that plaintiff has never required the Tire Company to make payments on the indebtedness as sales of merchandise were made, or to keep the amounts secured from those sales in a separate account. We have already pointed out that from the start plaintiff required the company merely to make payments monthly after the stock on the floor had been checked.
A statement of the account of Vidalia Tire Company with plaintiff reveals that the Tire Company was consistently behind in its payments to plaintiff, and that Electronic nevertheless continued to finance more purchases while the account was in arrears. Plaintiff thus at least appeared to sanction the use of the funds received from the sale of mortgaged items for purposes other than for payment on the Tire Company’s indebtedness to it.
Plaintiff has cited B-W Acceptance Corporation v. John H. Fairbanks, et al (Civil Action No. 14,688, W.D.La.1970), an unreported case decided by the United States District Court for the Western District of Louisiana, Monroe Division. In that case another finance company sued Dr. Fairbanks, and others, to recover the amount due on a mortgage debt arising out of the operation of Vidalia Tire Company. The court held that the action of Fairbanks *287 there amounted to “willful and malicious injury,” and that his discharge in bankruptcy did not release him from the debt.
In B-W Acceptance Corporation, the plaintiff (B-WAC) financed the purchase of some merchandise after Dr. Fairbanks began managing the store. The procedure used by B-WAC for evidencing and securing the indebtedness and in obtaining payment were identical to those used by Electronic in the instant suit. The court found that in February, 1969, while Fairbanks was managing the store, he falsely represented to B-WAC that none of the mortgaged merchandise had been sold recently, whereas some of that merchandise had in fact been sold that month, and that $6,000.00 of the funds which were on hand when the store closed were proceeds of the sale of merchandise on which B-WAC held chattel mortgages. The court also found that some of the merchandise which was mortgaged to B-WAC was sold after a decision had been reached to close the store, and that Fairbanks had instructed his employees to refuse to pay any of those funds to the mortgagee.
The facts in the B-W Acceptance Corporation case differ materially from those in the instant suit, and for that reason we do not consider the cited case to be applicable here.
We are convinced that Fairbanks’ actions did not constitute “willful and malicious injury” to plaintiff’s property, as that term is used in 11 U.S.C.A. § 35(a)(2). We thus find no error in the conclusion reached by the trial court that the discharge in bankruptcy granted to defendant Fairbanks relieved him from liability for the indebtedness which Electronic seeks to recover here.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.