**In the Matter of Hervia Lee ROBERTS, Bankrupt.**

**COMMERCE BANK OF KANSAS CITY, Plaintiff-Appellee,**

v.

**Hervia Lee ROBERTS, Defendant-Appellant.**

**Bankruptcy No. 79–0176–CV–W–5.**

United States District Court, W. D. Missouri, W. D.

Jan. 13, 1981.

Dennis G. Muller, Muller & Muller, Kansas City, Mo., for plaintiff-appellee.

Daniel C. Hall, Dale Irwin, Legal Aid, Kansas City, Mo., for defendant-appellant.

## ORDER

SCOTT O. WRIGHT, District Judge.

This case is before this Court on appeal from the order and judgment of the bankruptcy judge entered on August 14, 1978, following a hearing to determine the dischargeability of a debt owed by the defendant (hereinafter "Bankrupt"). Judgment of nondischargeability was entered in favor of the plaintiff (hereinafter "Bank") for the sum of $1,550.00 actual damages and the sum of $1,600.00 punitive damages. The record was transmitted to this Court pursuant to Rule 807 of the Bankruptcy Rules, and both parties filed briefs shortly thereafter.

### Facts

Prior to January 16, 1974, the Bankrupt's sister, Emily Venetta Roberts, tried to pur-

chase a 1974 Hornet automobile from Suburban American Motors of Raytown, Missouri, but she was turned down because "her credit was bad." The salesman suggested to Emily that she have someone else "sign for her" so she could obtain the money necessary to buy the car.[1] The defendant and his mother, Emily Roberts (who has the same name as the sister), purchased the car.[2] It was intended that the sister would make all the payments on the car. The Bankrupt did not intend to use, pay for, or take care of the car. The Bank approved the loan application, and the Bankrupt's sister took possession of the car and made the payments on the car for a period of nine months. The Bankrupt's sister then told him that her ex-husband was about to be released from prison and that she was afraid of him. The sister left town in September, 1974, without informing the Bankrupt where she was going. She discontinued making payments on the automobile. After being contacted several times by the Bank, the Bankrupt tried unsuccessfully to locate his sister. He then tried unsuccessfully to obtain a loan to pay for the car. On January 5, 1977, the Bank filed its petition against the Bankrupt in the Circuit Court of Jackson County, and that court entered a default judgment against the Bankrupt in the amount of $1,550.00 actual damages and $1,600.00 punitive damages.

The Bankrupt filed his voluntary petition in bankruptcy on April 20, 1978, listing the plaintiff Bank as a creditor. On May 10, 1978, the Bank filed a complaint objecting to the discharge of the Bankrupt's debt. The stated ground for the objection was Section 17(a)(2) of the Bankruptcy Act of 1898, as amended, 11 U.S.C. § 35(a)(2). This section provides in part that a debt founded upon a wilful, malicious conversion of the property of another is not discharge-

able in bankruptcy. The Bank's complaint charged the Bankrupt with concealing and converting an automobile in which the Bank held a security interest. In support of its claim, the Bank pleaded the state court default judgment it had obtained against the Bankrupt prior to bankruptcy for the conversion of a 1974 AMC Hornet automobile. On August 14, 1978, the bankruptcy court granted the Bank's motion for summary judgment and declared the Bankrupt's indebtedness to the Bank to be non-dischargeable in bankruptcy and awarded the Bank the sum of $1,550.00 actual damages and the sum of $1,600.00 punitive damages. The Bankrupt appeals from this decision pursuant to Bankruptcy Rules 801 *et seq.* For the reasons stated, this Court finds that the Bankrupt's indebtedness to the Bank is dischargeable in bankruptcy, and the bankruptcy court's decision is reversed.

### Opinion

■ On an appeal from the bankruptcy court, the district court is not permitted to try the case *de novo.* Bankruptcy Rule 810 provides that:

Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge the credibility of the witnesses.

■ A finding of fact is clearly erroneous if it is not supported by substantial evidence, and a finding is not supported by substantial evidence if it is contrary to the clear weight of the evidence. *In re Cox,* 244 F.Supp. 430, 434–35 (W.D.Mo.1965).

---

1. This statement was part of the evidence presented by the Bankrupt at the hearing. Although the bankruptcy judge failed to make this specific finding of fact in his order and judgment entered on August 14, 1978, in notes 1 and 7 of the order he stated that the defendant was granted an opportunity to present all of its evidence, and all of it was accepted as

true in ruling on the motion for summary judgment.

2. The Bankrupt and his mother signed an installment contract and a security agreement giving the Dealer, Suburban American Motors, a security interest in the car. Suburban American subsequently assigned this note to the Bank.

The Supreme Court has consistently held that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). *See also, In re Brown*, 412 F.Supp. 1066, 1069 (W.D.Okla.1975); *In re Cox, supra.*

The bankruptcy court found that the Bankrupt in this case wilfully and maliciously converted the automobile in which the Bank held a security interest. The question of intent is a question of fact, *Becker v. Shields*, 237 F.2d 622, 625 (8th Cir. 1956), and after reviewing the entire record, this Court concludes that the finding of wilful and malicious intent is clearly erroneous because it is contrary to the clear weight of the evidence.

In his "Statement of the Evidence for Review on Appeal," filed February 23, 1979,[3] the bankruptcy judge compared both the Bank's and the Bankrupt's differing contentions on the issue of intent. The Bank contends that:

Defendant may have testified that he believed he was only a co-signer, but the further evidence does not support such a statement. He was the principal signer of the contract admitted into evidence; he admitted title to the car was taken in his name solely; the car was insured in his name; and he further admitted that his sister did not even sign the contract.

The Bankrupt contends that

It was suggested to Emily [by the Dealer] that she convince a relative with better credit to sign for her so that she could get the money necessary to buy the car. Emily proposed this course of action to the defendant, and, as a favor to his sister, he signed the plaintiff's note in Emily's stead so that she could get the

car. The defendant believed that he was only a co-signer on the note and, as one, did not intend to use, pay for, or take care of the car.

The bankruptcy judge resolved these differences by pointing out that it was not a dispute over what facts were offered into evidence, but rather over what inferences should be drawn from the facts in evidence. The bankruptcy judge noted that the factual issue to be resolved is whether the Bankrupt had a *reasonable belief* that he signed the note as a co-signer. (Emphasis added.) The bankruptcy judge concluded "that it was not reasonable in view of the plain letter of the contract signed and the other surrounding circumstances."

But, it is immaterial whether the Bankrupt's belief was reasonable. The question is whether he had a good faith belief that he was merely a co-signer on the note. A good faith belief, even though unreasonable, precludes a wilful and malicious intent. A situation similar to the pending case existed in *In re Elliott*, 385 F.Supp. 1194 (M.D.La.1974), in which the bankrupt acted on the erroneous advice of his own attorney. The court held that there was no wilful and malicious conversion finding that

Whether or not such advice was correct is not the controlling factor in the matter before the Court. The only question is whether or not a good faith belief in such erroneous advice can preclude the malicious state of mind necessary to render a subsequent conversion of the property of another "wilful and malicious." Under the particular circumstances of this case, the conclusion is inescapable that malice was not present.

385 F.Supp. at 1198. The Supreme Court recognized in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), that a wilful and malicious injury does not necessarily follow from every act of conversion, and that "[t]here may be a

3. Due to a malfunction in the tape recorder, no transcript of the proceedings is available. The record for review on appeal was developed by the parties and the bankruptcy court in accordance with Rule 10(d) and (e) of the Federal

Rules of Appellate Procedure. This rule provides that each party is to submit a statement of the evidence, and the court is to resolve any conflicts between the statements.

conversion which is innocent or technical, an unauthorized assumption of dominion without wilfulness or malice." 293 U.S. at 332, 55 S.Ct. at 153.

The clear weight of the evidence in this case does not support a finding of a wilful and malicious state of mind on the part of the Bankrupt when he applied for the loan.[4] The bankruptcy judge based his finding of wilful and malicious intent on the grounds that the Bankrupt had concealed from the Bank the fact that he did not intend to use or pay for the car and the fact that the Emily who signed the contract was not his sister. Yet, each of these facts were known to the Dealer, the negotiating party. The Dealer knew that the Bankrupt did not intend to use or pay for the car. He also knew that the sister Emily was not the same Emily who signed the contract. No evidence shows that the Bankrupt misrepresented any facts or concealed any facts from the party with whom he dealt, the Dealer. A finding that the Bankrupt wilfully and maliciously concealed facts from a non-negotiating party (the Bank) which were known to the negotiating party (the Dealer) is not warranted by law. Wilful and malicious intent must be actual, not constructive. A review of the entire record leaves this Court with a definite and firm conviction that a mistake has been made. The discharge provisions of the Bankruptcy Act should be construed liberally in favor of the bankrupt, *Matter of Love*, 577 F.2d 344 (5th Cir. 1978), and the facts in this case do not support a finding of wilful and malicious conversion at the time the debt was incurred.

Nor was there a wilful and malicious conversion on the part of the Bankrupt when his sister disappeared and removed the car from the jurisdiction. There is no evidence that the Bankrupt took part in this conversion, *see Matter of Rutkowski*, 2

B.R. 677 (Bkrtcy.Ct., S.D.N.Y.1980). In fact, the evidence shows an unsuccessful attempt by the Bankrupt to locate his sister and the car. The Bankrupt adequately explained his failure to produce the security, *see Matter of Love, supra*, and there was no conversion, technical or otherwise, committed by the Bankrupt at the time his sister disappeared with the car.

The evidence fails to support a finding that the Bankrupt's debt to the Bank was founded upon a wilful and malicious conversion of property within the meaning of Section 17(a)(2) of the Bankruptcy Act of 1898, as amended, 11 U.S.C. § 35(a)(2), and the debt, therefore, is dischargeable in bankruptcy. Accordingly, it is hereby

ORDERED that the decision of the bankruptcy court is reversed and vacated, and the Bankrupt's debt to the Bank is hereby ordered to be discharged in bankruptcy. The parties will bear their own costs.

---

4. The bankruptcy judge, proceeding under a unique theory of conversion, held that the conversion occurred at the time the Bankrupt applied for the loan. He reasoned that because the Bankrupt had concealed his intention from the outset of the transaction to dispose of the automobile by giving it to his sister to treat as her own, and because he in fact so disposed of the automobile, he "disabled himself from pro- ducing it into the possession of the [Bank] when the law required that he do so." The Court finds it unnecessary to either accept or reject this theory of conversion because even if there was a technical conversion at the time the debt was incurred, it was an innocent conversion, and the debt is dischargeable in bankruptcy.