**In the Matter of Rick LAIR, and Robin Lair, Debtors.**

**SUR–GRO PLANT FOOD, INC., Plaintiff,**

**v.**

**Rick LAIR, and Robin Lair, Defendants.**

**Bankruptcy No. 83–02154–SJ–W. Adv. No. 83–1209–SJ–W.**

United States Bankruptcy Court, W.D. Missouri, W.D.

April 24, 1984.

James H. Thompson, Jr., Kansas City, Mo., George Pickett, Plattsburg, Mo., for plaintiff.

James R. Brown, Brown & Brown, Kansas City, Mo., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL DECREE AND JUDGMENT DENYING COMPLAINT FOR A DECREE OF NONDIS-CHARGEABILITY

DENNIS J. STEWART, Bankruptcy Judge.

This is an action brought by the plaintiff for the purpose of obtaining a decree of

nondischargeability of the defendants' indebtedness to it on the grounds of willful and malicious conversion of secured property within the meaning of § 523(a)(6) of the Bankruptcy Code. The action came on before the bankruptcy court for hearing of its merits on March 26, 1984, whereupon the parties appeared by counsel and the evidence warranted the following findings of fact. On March 22, 1982, the debtors executed a promissory note to plaintiff in the sum of $3,859.22 payable "July 15, 1982 or crop harvest (wheat) whichever occurs first." Simultaneously, they executed a security agreement in favor of plaintiff "in the proceeds of all crops now growing or hereafter to be grown on all land owned, rented, leased or farmed by debtor.... The ... elevator [Far-Mar-Co as to the wheat and "Bartlett" as to the soybeans] will be notified that Sur-Gro has a crop mortgage and the checks will be payable to both Sur-Gro and buyer and will be mailed to the Sur-Gro office." In relation to these instruments, the debtors planted 93 acres of soybeans and 30 acres of wheat which were harvested after the date of execution of the instruments. Some 1,281 bushels of soybeans were harvested and 250–350 bushels of wheat. All of the harvested crops were sold to the elevators without the permission of the plaintiff, without having the checks in payment therefore jointly made out to the plaintiff as well as the debtors, and without applying any of the proceeds to the indebtedness owed to plaintiff. The total amounts realized were some $6,829.14 from sale of the soybeans and about $800.00 from the sale of wheat. The amount currently owed by the debtors to plaintiff is $6,664.14. According to the testimony of the defendant Ricky Lair, the $800.00 proceeds from sale of the wheat crop were paid out as follows: half to the landlord for rental of the acreage on which the wheat was planted and the other half for a trucking and combine bill. He re-

ceived no monies which could be classified as a net profit. He states that the $6,829.14 from the sale of soybeans was spent in a similar manner: $2,540.00 to two lessors of the ground on which the crop was raised; $1,000.00 for combining and hauling; and the remainder for "other bills on the farm and stuff like that." According to his uncontradicted testimony, again, he realized no net profit from the sale of the soybean crop.

The governing decisions of our district court clearly hold that, in order to earn a decree of nondischargeability on the grounds of willful and malicious conversion, the plaintiff must demonstrate a "subjective, conscious" intent to convert the property of another. *In re Bellmer*, Civil Action No. 79–6042–CV–SJ (W.D.Mo.1980). Accordingly, even if the debtors' belief that they had a right to dispose of the security on their own account is unreasonable, they may still be acquitted of any willful and malicious conduct. A "good faith" belief, "even though unreasonable" suffices to demonstrate the absence of willfulness and malice. *Matter of Roberts*, 8 B.R. 291, 293 (Bkrtcy.W.D.Mo.1981). The governing security agreement does not clearly and directly say that all monies derived from the crops must be paid to or for the benefit of the plaintiff. Its wording would only require the debtors' notification of the elevator as to the existence of the security agreement; accordingly, it contains no clear language which would prohibit the debtors from paying the expenses of harvesting from the proceeds of the crops. In *In re Bellmer, supra*, the existence of the slightest ambiguity in the governing security instrument was held to excuse the conversion of the security and prevent its being labelled willful and malicious.[1] Further, the instrument in this case was drafted by plaintiff and, hence, any ambiguity in it must be resolved in favor of the defendants. And finally, the testimony of Ricky

---

1. In the *Bellmer* case, for example, which is cited in the text, the district court took note that the security interest in after-acquired property was inconspicuous and that, therefore, "(i)t is unclear whether, even if the bankrupt had carefully read all provisions of the agreement, he would have understood that after-acquired accounts receivable would have been or could have been subject to the security interest."

Lair to the effect that he spent the monies for the expenses of the harvest and never realized any net profit is wholly uncontradicted. If accepted, it is consistent only with honest and good faith disposition of the proceeds and rules out willfulness or malice. And the testimony, as well as being uncontradicted, is unimpeached. It is therefore, accordingly,

ORDERED, ADJUDGED AND DECREED that the defendants' liability to plaintiff be, and it is hereby, declared to be dischargeable in bankruptcy.

