M. F. STEVENSON, Exr. of the Estate of B. F. Stevenson, deceased, Plaintiff-Appellee, v. HARRY J. BAKER, JR., Defendant-Appellant.

(No. 12107;

Fourth District—April 4, 1974.

Francis J. Davis, of Auler Law Offices, of Champaign, for appellant.

Raymond R. Kimpel, of Summers, Watson & Kimpel, of Champaign, for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

This is an appeal by the defendant from a judgment against him in the amount of $16,165 entered at the conclusion of plaintiff's action on two notes in the face of defendant's plea of discharge in bankruptcy as a defense.

The facts of the case are uncomplicated except for the rather long period of time their chronology encompasses. On May 26, 1964, the plaintiff filed suit against the defendant in Champaign County for money due on promissory notes of $10,000 and $2000 executed in 1961 in the State of Florida. The $10,000 note was payable at the rate of $2000 per year beginning January 1, 1963, and the $2000 note was payable in full on January 1, 1962. On June 25, 1964, the defendant filed an answer,

generally denying the allegations of the complaint and pleading a novation of the debt to a third party whom defendant alleged had assumed the debt as well as the lease to the drug store for which the loans were made to equip and stock. On December 21, 1966, the suit was dismissed for want of prosecution. On January 12, 1967, the plaintiff made a motion to vacate the dismissal and to reinstate the cause of action, which motion was granted on the same date. On May 19, 1967, the defendant filed a voluntary petition in bankruptcy in the District Court of Nevada in which he listed plaintiff's claim as a scheduled debt. On June 5, 1967, the plaintiff moved for leave to file an amended Count II to his complaint in the Circuit Court of Champaign County, and the motion was granted following a hearing on June 8, 1967. The amended Count II to the complaint was filed alleging the unauthorized removal with the intent to defraud of fixtures and equipment which were the subject of the chattel mortgage executed simultaneously with the $10,000 note to secure that debt; and fraud in tendering several stock certificates which plaintiff alleged were worthless and known by the defendant to be worthless, as security for the $2000 note. On June 14, 1967, the defendant filed a petition in the District Court of Nevada alleging that the plaintiff was alleging fraud in an attempt to circumvent the debt listed in the defendant's petition for bankruptcy pending in the Federal court, and stating that the plaintiff should be, as was the defendant, "willing to litigate the matter before this honorable court." Also in his petition the defendant asked the district court to stay the Champaign Circuit Court action, "until the final adjudication of his application for a discharge, unless the same be prosecuted in these pending proceedings in bankruptcy." The stay was issued by the District Court of Nevada along with an order for the plaintiff to show cause why the stay should not be entered by July 28, 1967. On July 27, 1967, the plaintiff filed a special and limited appearance to contest the jurisdiction of the District Court of Nevada to issue the order or to consider the dischargeability of the debt, contending that where a suit is pending against a bankrupt in a State court, the bankruptcy court should not restrain the prosecution of that State action. The date set for the plaintiff's appearance and for the plaintiff to show cause was continued, and the matter finally came on for hearing on April 17, 1968, with plaintiff failing to appear either in person or by counsel. On October 9, 1968, defendant filed in the Illinois Circuit Court in Champaign County an amendment to his answer asserting the defense of discharge in bankruptcy. On October 17, 1968, the defendant filed an answer to Count II of plaintiff's complaint denying the allegations of fraud asserted therein and denying that the stock pledged as security for the $2000 note was worthless. On October 30, 1968, the District Court

of Nevada issued an order denying the petition set forth in plaintiff's special appearance, finding that it had jurisdiction over the plaintiff's claim, and finding that the discharge order of April 17, 1968, included the claim and obligation owed the plaintiff.

After plaintiff's death in October 1969, his executor was substituted as plaintiff, both parties argued for summary judgment, and both were denied. Defendant's motion included a certified copy of the proceedings in the District Court of Nevada in an attempt to show that the issue of fraud was heard and decided in favor of the defendant in the bankruptcy court. Following several more continuances, on March 23, 1972, the cause was heard at a bench trial in Champaign County concluding with a judgment in favor of the plaintiff on the $10,000 note with interest. The circuit court held that the $2000 loan was not made in reliance of the stock covered by the chattel mortgage given to secure it since that loan was made prior to and independent of the voluntary tender of the stock as security and the execution of the mortgage. However, as to the $10,000 note, the court found that obligation was not discharged in bankruptcy for two reasons; first, finding that the defendant had wrongfully removed fixtures and inventory from the drug store, referring to such action as a wrongful conversion which constituted a willful and malicious injury to property of the creditor within the meaning of section 17 of the Bankruptcy Act; and in addition finding that the plaintiff had relied on the defendant's representation that the $10,000 would be used to equip and stock the drug store, but that it was not, and that the defendant did not intend to so use it, so the $10,000 loan was obtained by false pretenses and representation, which also precludes dischargeability under section 17 of the Bankruptcy Act.

The primary issue is whether the defendant's discharge in bankruptcy by the District Court of Nevada pursuant to the defendant's voluntary petition in bankruptcy filed while the plaintiff's suit on the notes was pending, but before the count was added alleging circumstances which would exempt the obligation from discharge in bankruptcy, which discharge was found by the district court to include the plaintiff's debt, was res judicata as to the matter in the Illinois circuit court. If it was, then plaintiff's proper remedy would be an appeal within the Federal system and the issues concerning the findings and judgment of the Illinois circuit court raised by the defendant need not be considered.

Section 17(a)(2) of the Bankruptcy Act pertaining to debts not affected by discharge provides that a discharge in bankruptcy releases a bankrupt from all his provable debts, whether allowable in full or in part, except such as "* * * are liabilities for obtaining money or property by false pretenses or false representations, * * * or for willful

and malicious conversion of the property of another." (11 U.S.C.A., sec. 35(a)(2).) By way of comment and for its possible value in analyzing policy considerations and in determining the previous intent of the Bankruptcy Act, it should be noted that since 1970, section 17(c)(2) of the Bankruptcy Act specifically requires a creditor who contends that his debt is not discharged because obtained by false pretenses or false representations, or because it is a liability for a willful and malicious conversion of his property to file a timely application for a determination of dischargeability in the Bankruptcy Court or else the debt will be discharged. (11 U.S.C.A., sec. 35(c)(2).) Section 14(f) of the Bankruptcy Act providing that creditors asserting non-dischargeability of debts allegedly incurred as a result of loans based upon false financial statements are no longer permitted to bring suit in State courts after discharge has been granted, implies that, prior to 1970, such claims could be brought in State courts after a discharge in bankruptcy. The difficulty in the instant case is in determining whether that course was still open to the plaintiff after his allegations of fraudulent inducement and willful and malicious injury to property were brought before the bankruptcy court by the defendant in his petition to stay the State court, the subsequent decision of the bankruptcy court that it had jurisdiction over the plaintiff's claim and the order including plaintiff's debt in the discharge, where the merits of the plaintiff's assertions of non-dischargeability were apparently never argued or passed upon.

One school of thought holds that the effectiveness of section 17(a)(2) in saving liabilities within its term from discharge is not dependent upon interposition of objections to discharge, and the creditor to whom the liability runs need not participate in any manner in the bankruptcy proceedings in order to safeguard his rights as against discharge of the bankrupt if one is granted. (*Household Finance Corp. v. Hamer*, 248 Md. 567, 238 A.2d 112.) Illinois seems to have taken the same position on the issue, it having been stated that the granting of a discharge in bankruptcy is a function of the bankruptcy court alone, but the effect of the discharge can be determined by any court where it is properly raised. (*Avco Finance Co. v. Erickson*, 132 Ill.App.2d 868, 270 N.E.2d 111.) Under this theory it has even been held that where the bankrupt obtained a loan by virtue of a materially false statement, the creditor could object to the discharge or permit the discharge and sue at law on the theory that discharge did not wipe out the debt. (*Friendly Finance Co. v. Stover*, 109 Ga.App.21, 134 S.E.2d 837, citing *Watts v. Ellithorpe* (1st Cir. 1943), 135 F.2d 1.) *Watts* reached the same result, saying that the bankruptcy court has discretion to decide dischargeability of particular debts, but need not do so, and that generally the effect of a dis-

charge in bankruptcy is for debtors to raise by pleading it as a bar when a creditor attempts to enforce his claim. *Watts* explained that policy by saying that bankruptcy courts are interested primarily in the speedy settlement of the bankrupt's estate and should not be required to stop and hear testimony on whether various creditors have debts which are dischargeable.

Section 11(a) of the Bankruptcy Act concerning suits by and against bankrupts provides that a suit which is founded upon a claim from which a discharge would be a release and which is pending against a person at the time of the filing of a petition in bankruptcy shall be stayed until adjudication or the dismissal of the petition. (11 U.S.C.A., sec. 29(a).) The plaintiff's action in the instant case was pending at the time the defendant filed for bankruptcy, but was then simply an action on the notes which were due and unpaid with the amended Count II alleging the malicious injury to property and fraudulent inducement coming after the petition in bankruptcy was filed. *In re Urquhart* (1970), 427 F.2d 492, holding "* * * it is well settled that the bankruptcy court may decide the effect of the discharge, and at the same time stay the state court proceeding * * * *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230" would seem to support defendant's contention that the discharge of April 1968 which was stated in October 1968 to specifically include plaintiff's debt, is res judicata to the State court. In the instant case the defendant's petition to the bankruptcy court raised the allegations made by the plaintiff's amended petition in the circuit court which would avoid dischargeability and asked that the bankruptcy court stay the State court proceedings pending final determination of the issue or adjudication of it in the bankruptcy court. The bankruptcy court did stay the State court proceedings, and the plaintiff made a limited appearance for the purpose of contesting the jurisdiction of the bankruptcy court, which petition was denied. The bankruptcy court found that it had jurisdiction over the parties and the subject matter and found (after a hearing according to the defendant, although it is not in the district court's record included with the record from Champaign County) that the claim of the plaintiff was discharged.

. Strictly speaking, an unsuccessful opposition to the granting of a discharge to the bankrupt is not res judicata as to the right of the objecting creditor thereafter to assert that his claim is excepted from discharge by reasons based upon facts asserted in the specifications of objections. (*Friend v. Talcott*, 228 U.S. 27, 57 L.Ed. 718, 33 S.Ct. 505.) That case went on to say that a finding in the bankruptcy proceeding against the creditor on his allegations made for the purpose of defeating the discharge would be res judicata, but not as to a fact to which there was no

finding in the proceedings for discharge. An attack upon a defense of discharge in bankruptcy on the ground that the debt is excepted from discharge does not constitute a collateral attack for the discharge since it does not controvert the validity and general effectiveness of the discharge. *Sutherland v. Lasher,* 41 Misc. 249, 84 N.Y.S. 56.

The plaintiff argues that both parties elected to submit the issue of dischargeability to the State court, and they should have exhausted the remedies there rather than subsequently attempting to submit the issue to the Federal bankruptcy court; and further that the bankruptcy court abused its discretion in enjoining the State court because the bankruptcy court should not interfere with State courts unless "unusual circumstances" exist, and that Federal intervention should not be substituted for the appellate process in the State courts. Conversely the defendant argues that since he scheduled the debt owed plaintiff on his petition for bankruptcy, and included the allegation of fraud and willful and malicious injury raised by the plaintiff in his later Count II in the circuit court in his motion to the bankruptcy court to stay plaintiff's suit in the State court, which was granted along with the order to plaintiff to show cause following which the bankruptcy court found it had jurisdiction and ultimately that the plaintiff's debt was discharged, pursuance of the matter in the State court constitutes an improper collateral attack on the Federal court's judgment.

 Defendant further contends that even if plaintiff is correct that before the 1970 amendment a creditor could, at his option, allow a debtor to get a discharge in bankruptcy and then sue in the State court on the grounds that his debt was not discharged because of an exception in the Bankruptcy Act, it would not apply here where the issue of dischargeability was heard by the bankruptcy court and a specific finding was made that the plaintiff's debt was included in the discharge. In this context the issue becomes whether the bankruptcy court really "heard" and "decided" the matter of dischargeability where it is only clear that the bankruptcy court decided the question of jurisdiction, stayed the State court proceedings, and specifically included plaintiff's debt in the discharge. If the defendant's contention is correct, then the plaintiff's only recourse would be to the appellate process in the Federal system rather than a collateral attack in the State of Illinois. Although until the 1970 amendment to the Bankruptcy Act, there was no specific requirement that the creditor raise in the bankruptcy court itself the matters of fraud in the inducement, or willful and malicious injury to property to prevent a discharge of his debt, in general terms the law seems to be on the side of the defendant—bankruptcy is a Federal matter, and the Bankruptcy Act is to be supreme over State laws on the matter. *Kesler*

*v. Department of Public Safety*, 369 U.S. 153, 7 L.Ed.2d 641, 82 S.Ct. 807; *Perez v. Campbell*, 402 U.S. 637, 29 L.Ed.2d 233, 91 S.Ct. 1704.

The plaintiff relies on two recent Illinois cases (*Appliance Buyers Credit Corp. v. Zdeb*, 3 Ill.App.3d 1055, 280 N.E.2d 7; *First National Bank of Lansing v. Padjen*, 61 Ill.App.2d 310, 210 N.E.2d 332) which were cited by the trial court where creditors recovered debts which were scheduled by debtors who had received a general discharge in bankruptcy. However, in the instant case, in addition to plaintiff's debt being scheduled by the debtor in his petition for bankruptcy which would, as a matter of course, include it in the general discharge, the plaintiff's contention as to non-dischargeability of his particular debt and his lawsuit thereon was raised before the bankruptcy court, giving plaintiff an opportunity to fully present his theories of non-dischargeability, with that court staying the Illinois proceedings, finding it had jurisdiction over the parties and the debt, and ultimately finding that the debt was discharged.

■■ Also this case is distinguishable from the cases cited by the plaintiff, in which the creditors moved as quickly as possible to protect themselves. Here the plaintiff first instituted his suit to the circuit court in 1964. The plaintiff failed to diligently pursue the matter and, only after the defendant filed for bankruptcy some years later, was the count added alleging grounds which would preclude the debt's discharge in bankruptcy. This dilatory behavior of the plaintiff further conflicts with the purpose of the bankruptcy law to expediently determine the financial status of the bankrupt and give the honest debtor a new start.

Here in light of this general policy of the Bankruptcy Act and the specific power of the bankruptcy court to stay State court proceedings, there were unusual circumstances to warrant the bankruptcy court's deciding the dischargeability of this particular debt. (*In re Urquhart*) That is, the plaintiff filed a suit on the note, the defendant filed for bankruptcy scheduling the plaintiff's debt and received a general discharge, plaintiff added a count in the State court alleging grounds which would avoid the discharge of his debt, the defendant brought this allegation to the attention of the bankruptcy court, asking for a stay of the State court proceedings pending determination of the matter, the bankruptcy court stayed the State court, found it had jurisdiction of the parties in the debt, and after the plaintiff failed to appear and show cause, the bankruptcy court declared that plaintiff's debt was discharged by the general discharge. Then after another delay of several years, the plaintiff pursued his action in the State court. If this procedure is permitted most creditors could, by similar reasoning and hindsight, argue that every debtor intended to misuse the borrowed funds or convert the

security given and thus avoid in the State court the effect of a general discharge in bankruptcy. The whole purpose and rationale of bankruptcy would be thwarted by this type of action, and is distinguishable from the case cited by the plaintiff where the creditor, immediately after discovering the debtor's conversion of the mortgaged television sets, instituted a suit and was awarded the remaining sets, and then diligently pursued the matter by suing for the remaining debt in the State courts following the plaintiff's discharge in bankruptcy on the grounds his debt was exempted because it was a liability for conversion. This case is further distinguishable because there was more than the general discharge; the matter of dischargeability being raised before the bankruptcy court with the creditor clearly having an opportunity to pursue the matter and failing to do so, and the order of the bankruptcy court is res judicata on the parties in the circuit court.

As noted above, there are cases holding that a creditor may raise the issue of dischargeability of his debt in the bankruptcy court, or remain silent and sue in State courts. However, here the plaintiff failed to fully respond to an order of the bankruptcy court to show cause, and then in the fact of the specific inclusion of his debt in the discharge, pursued his suit in State courts. In a case involving patent infringements in discussing whether the same issues (the validity of a patent) had been decided in earlier lawsuits, and if so, whether there was complete mutuality of the parties so as to preclude a re-litigation, the United States Supreme Court noted that the achievement of substantial justice rather than symmetry is the measure of the fairness of the rules of res judicata. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 28 L.Ed.2d 788, 91 S.Ct. 1434.

■■ Any argument that the Federal court abused its discretion in either granting the discharge in bankruptcy, staying the State court proceedings, or in specifically finding that defendant's obligation to the plaintiff was included in the discharge, should be appealed within the Federal system and not in the State courts of Illinois.

Reversed.

SMITH, P. J., and TRAPP, J., concur.