*In re* MARRIAGE OF JUDITH DONNELLAN, Petitioner-Appellee, and
JOHN J. DONNELLAN, Respondent-Appellant.

First District (5th Division)    No. 79-1686

Opinion filed November 26, 1980.

John F. Martoccio, of Chicago, for appellant.

George Coniglio, of Chicago Heights, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Petitioner, Judith Donnellan, initiated post-judgment divorce proceedings which sought past due child support and unpaid debts enumerated in a stipulation agreement incorporated in the parties' judgment for divorce. Respondent, John Donnellan, appeals from the trial court's denial of his affirmative defense that these debts had been discharged by the Federal Bankruptcy Court for the Northern District of Illinois and contends that the final order of the bankruptcy court must be recognized in State court proceedings. There is no issue regarding past due child support.

The events leading up to this appeal are not in dispute: the parties were married August 5, 1961, in Chicago Heights, Illinois, and were subsequently divorced August 7, 1974, in Cook County, Illinois. The judgment for divorce incorporated a stipulation agreement, which provided in part:

"11. That the Defendant shall be responsible for the payment of all outstanding indebtedness incurred by the parties hereto during the course of this marriage. That said debts include, but are not limited to the following:

| | | |
|---|---|---|
| 1. | Sears Roebuck & Company | $400.00 |
| 2. | Montgomery Wards | $1,000.00 |
| 3. | Riverdale Bank (Car Loan) | $107.00 Mo. |
| 4. | Jorden Seskin, M.D. | $200.00 |
| 5. | Bank Americard | $200.00 |
| 6. | Borden's Milk Company | $200.00 |

12. That the mortgage payments on the second mortgage due the Ashland Bank in Beverly, Illinois, on the real estate located at 11 E. Glengate, Chicago Heights, Illinois, have fallen in arrears for the months of December, 1973, January, February, March, April, May and June, 1974, or a total of $1,200.00 @ of $200.00 per month. That the Defendant hereby agrees to bring the said second mortgage payments current and to pay off same, and shall hold the Plaintiff harmless from the payment of said mortgage.

13. That the Defendant shall continue to pay, and keep on a current basis, the mortgage payments on the First Mortgage payable to the Chicago Heights National Bank, until such time as the Entry of Decree for Divorce. That, upon entry of decree and after the payment of same, the Plaintiff shall hold Defendant harmless from the payments to the Chicago Heights National Bank in the future."

Thereafter, respondent filed a petition for voluntary bankruptcy in the United States District Court for the Northern District of Illinois, Eastern Division, case No. 78 B 5587, in which he scheduled petitioner as

a creditor with respect to the debts enumerated in paragraphs 11-13 of the stipulation agreement.

Respondent then commenced adversary proceedings to determine the dischargeability of these debts by filing a complaint and serving notice on petitioner pursuant to section 17(c) of the then applicable provisions of the Bankruptcy Act. (11 U.S.C. §35(c) (1976), (current version at 11 U.S.C. §523(a)(5) (1979).) After petitioner failed to appear or answer, the bankruptcy court noted jurisdiction over the parties and subject matter and found the debts arising from paragraphs 11-13 of the Stipulation Agreement to be in the nature of a property settlement and not in the nature of alimony and consequently discharged these debts on October 26, 1978.

Petitioner commenced post-judgment divorce proceedings seeking arrearages of child support and the payment of certain enumerated debts. Her petition in part provided:

"c. The defendant has failed to satisfy certain obligations which the Decree required him to pay and which payment has been made by the Petitioner as follows:

(1) The sum of $261.71 paid to the Chicago Heights National Bank;

(2) The sum of $450.00 paid to the Baldwin Co.;

(3) The sum of $200.00 to the Borden Milk Company;

(4) The sum of $280.00 to the South Suburban Clinic;

(5) The sum of $800.00 to Ashland State Bank;

(6) The sum of $840.00 to St. Agnes School for the period 1975 through 1977;

(7) The sum of $214.00 for books for the children at St. Agnes for the period 1974 through 1977;

(8) The sum of $550.00 to Marian High School for the year of 1976;

(9) The sum of $485.80 for life insurance premiums.

d. The Defendant executed a Quit Claim Deed conveying his right, title and interest to property located at 11 East Glengate in Chicago Heights, Illinois, to the Plaintiff and failed to disclose that he had become obligated in connection with a business venture which resulted in a judgment being taken against the Defendant and other parties outside of the family with the result that a lien in the amount of $4,807.50 has been placed upon said property."

Respondent's answer to this petition raised the affirmative defense that the final judgment order of the bankruptcy court discharged these debts.

At the post-decree hearing, petitioner, through her attorney, admitted that she had been served with notice that adversary proceedings

had been commenced to determine the dischargeability of the debts set forth in paragraphs 11-13 of the stipulation agreement, but maintained that she was not obligated to appear before the bankruptcy court in a matter interpreting a decree or order of the circuit court of Cook County where the decree clearly states the nature of the obligations. She further argued that the bankruptcy court did not have jurisdiction to determine the dischargeability of these debts contending that jurisdiction rested with the circuit court of Cook County pursuant to its own decree.

The court then ordered that respondent's affirmative defense of discharge in bankruptcy be denied and that the debts in issue are not dischargeable in bankruptcy as existing family obligations. This appeal followed.

OPINION

Respondent maintains that a final judgment entered by a court of competent jurisdiction is conclusive on the same matter as between the same parties in any subsequent suit in the same court or any other court. ■■ Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction operates as a bar to any subsequent litigation between the same parties or their privies on matters found to be part of the same cause of action before the same or a different tribunal. (*Hilti, Inc. v. Griffith* (1978), 68 Ill. App. 3d 528, 532, 386 N.E.2d 63, 65; *Raymond Construction Co. v. Midwest America Development, Inc.* (1978), 67 Ill. App. 3d 332, 334, 384 N.E.2d 907, 908.) Historically, this doctrine has required three essential elements to be the same in both cases: the cause of action, the subject matter and the parties or their privies. (*Miller v. Bank of Pecatonica* (1980), 83 Ill. App. 3d 424, 427, 403 N.E.2d 1262, 1265; *Drabik v. Lawn Manor Savings & Loan Association* (1978), 65 Ill. App. 3d 272, 276, 382 N.E.2d 333, 336.) This judicially created doctrine resulted from the practical necessity that there be an end to litigation and that controversies once decided on their merits shall remain in repose (*Hughley v. Industrial Com.* (1979), 76 Ill. 2d 577, 582, 394 N.E.2d 1164, 1166), thereby protecting the defendant from harassment and the public from multiple litigation. (*La Salle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944, 954, 369 N.E.2d 1363, 1371.) Consequently, a prior adjudication between the same parties is conclusive upon them, not only as to matters actually determined but as to every other thing within the knowledge of the parties which might have been set up as a ground for relief or defense. (*Menconi v. Davison* (1967), 80 Ill. App. 2d 1, 6, 225 N.E.2d 139, 142.) The basis of *res judicata* is that the party against whom the doctrine is raised has litigated or had the opportunity to litigate the same matter in a former action. (*Drabik*, 65 Ill.

App. 3d 272, 277, 382 N.E.2d 333, 336.) Accordingly, judgments of default have the same validity and force as those rendered upon a trial of the issues. *Menconi*, 80 Ill. App. 2d 1, 6, 255 N.E.2d 139, 142.

■■ The value of a plea of *res judicata* is not determined by the reasons given by a court in support of that judgment nor is it mitigated by the fact that it rests upon an erroneous view of the law. (*Hilti*, 68 Ill. App. 3d 528, 532, 386 N.E.2d 63, 65; *Pierog v. H. F. Karl Contractors, Inc.* (1976), 39 Ill. App. 3d 1057, 1060, 351 N.E.2d 249, 252.) Consequently, a cause of action by a court of competent jurisdiction cannot be tried again in new proceedings before the same or a different tribunal, except in a direct action to set aside the prior adjudication. *Fender v. St. Louis Southwestern Ry. Co.* (1979), 73 Ill. App. 3d 522, 525, 392 N.E.2d 82, 84; *Drabik*, 65 Ill. App. 3d 272, 276, 382 N.E.2d 333, 336.

A branch of *res judicata*, referred to as estoppel by verdict or collateral estoppel, provides a similar conclusive effect when the same parties or their privies attempt to relitigate the identical issues actually or necessarily decided by a court of competent jurisdiction in an earlier, but different, cause of action. *Raymond Construction Co. v. Midwest America Development, Inc.* (1978), 67 Ill. App. 3d 332, 334, 384 N.E.2d 907, 908.

In determining whether the prior judgment effectively bars petitioner's action, it is necessary to compare the nature and purpose of the present proceedings with those in the Federal court.

Section 17(a)(7) of the Bankruptcy Act pertaining to debts not affected by discharge provides that "a discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or part, except such as * * * are for alimony due or to become due, or for maintenance or support of wife or child * * *." 11 U.S.C. §35(a)(7) (1976).

Section 17(c)(1) of this Act further provides that the bankrupt or any creditor may file an application with the court for the determination of the dischargeability of any debts. (11 U.S.C. §35(c)(1) (1976).) After a hearing upon notice, the court shall determine the dischargeability of any debt for which application for such determination has been filed. 11 U.S.C. §35(c)(3) (1976).

Section 17(c) gives a debtor a permissive grant to file a complaint, and by comparison with section 17(c)(2),[1] it is clear that the bankruptcy

---

[1] Section 17(a) of the 1970 Bankruptcy Act (11 U.S.C. §35(a)) enumerates eight classes of debts which are not dischargeable in bankruptcy. Section 17(c)(2) of the Act gives the bankruptcy court exclusive jurisdiction to consider the dischargeability of debts enumerated under sections 17(a)(2), (4) and (8). With regard to the other classes of debts, State courts enjoy concurrent jurisdiction with the bankruptcy court to determine dischargeability. *Pares v. Pares* (E.D. Wisc. 1977), 428 F. Supp. 1005, 1006.

court has concurrent jurisdiction with appropriate local courts to determine the dischargeability of debts claimed nondischargeable because of section 17(a)(7). 1A Collier, Bankruptcy §17.22A, at 1678 (14th ed. 1978); *Pares v. Pares* (E.D. Wisc. 1977), 428 F. Supp. 1005.

In the instant case respondent scheduled petitioner as a creditor with respect to the debts enumerated in paragraphs 11-13 of the stipulation agreement in his petition for voluntary bankruptcy. While simply scheduling petitioner as a creditor does not discharge these debts, respondent went further and commenced adversary proceedings pursuant to section 17(c) of the Bankruptcy Act (11 U.S.C. §35(c) (1976)). Petitioner, through her attorney, concedes that she received notice of these proceedings but declined to appear or answer.

Although petitioner was afforded the opportunity to present her defense before a tribunal of competent jurisdiction, she asserts two grounds in support of her position that the trial court had the authority to reconsider the identical issue already decided by the Federal bankruptcy court. .

■■ First, petitioner maintains that despite the fact that she failed to appear, the bankruptcy court was obligated to hold an evidentiary hearing to determine the nature of these debts. Section 17(c)(3) of the Bankruptcy Act (11 U.S.C. §35(c)(3) (1976)) which provides that the issue of dischargeability shall be determined "[a]fter hearing upon notice * * *" does not require an evidentiary hearing or trial unless there are disputed issues of material fact to be resolved. *In re Crimmins* (S.D.N.Y. 1975), 406 F. Supp. 282, 285. .

The present case may be compared to *Stevenson v. Baker* (1974), 18 Ill. App. 3d 542, 310 N.E.2d 58. There, a creditor brought suit against a debtor in the State court. The debtor subsequently received a general discharge in bankruptcy. The creditor then added a count to his complaint alleging that the debt had been secured by fraud which, if true, would render the debt nondischargeable. The debtor sought and was granted a stay of the State court proceedings by the bankruptcy court pending determination of the fraud issue. Although the creditor was served with notice of the bankruptcy court proceedings, he failed to appear. After finding it had jurisdiction over the parties, the bankruptcy court declared the debt discharged. The creditor subsequently recovered the debt in the State court proceedings. On appeal, the judgment was reversed since the court found that the debt had been discharged in the bankruptcy court and that judgment was *res judicata* concerning the validity of the debt. The appellate court held that the creditor had received notice and had an opportunity to respond and failing to do so was barred from relitigating the issue. The court concluded that the creditor's proper recourse was to challenge the propriety of the bank-

ruptcy court's actions within the Federal system and not the State courts of Illinois.

██ Petitioner also seeks to avoid the effects of *res judicata* by suggesting that the order of the bankruptcy court finding the enumerated debts to be in the nature of a property settlement and not in the nature of alimony did not reach the additional determination of whether such debts constitute maintenance or support. However, once the bankruptcy court determined that the enumerated debts were in the nature of a property settlement, these obligations did not fall within the exceptions of section 17(a)(7) of the Bankruptcy Act and were consequently dischargeable. (*In re Birdseye* (10th Cir. 1977), 548 F.2d 321, 322; *In re Cox* (10th Cir. 1976), 543 F.2d 1277, 1279; *Nichols v. Hensler* (7th Cir. 1976), 528 F.2d 304, 307; *Jones v. Tyson* (9th Cir. 1975), 518 F.2d 678, 680.) Petitioner was afforded an opportunity to present this issue to the bankruptcy court but failed to do so. The doctrine of *res judicata* applies equally to those matters raised as well as those which may have been raised. (*Drabik v. Lawn Manor Savings & Loan Association* (1978), 65 Ill. App. 3d 272, 382 N.E.2d 333; *Menconi v. Davison* (1967), 80 Ill. App. 2d 1, 225 N.E.2d 139.) Petitioner's recourse to challenge the propriety of the bankruptcy court's order discharging the debts enumerated in paragraphs 11-13 of the stipulation agreement was properly within the Federal courts and not through the State courts of Illinois. *Stevenson v. Baker* (1974), 18 Ill. App. 3d 542, 310 N.E.2d 58.

For the reasons stated, the order of the circuit court of Cook County that respondent's affirmative defense of discharge in bankruptcy be denied and that the debts in issue are not dischargeable in bankruptcy as existing family obligations is reversed.

Reversed.

SULLIVAN, P. J., and WILSON, J., concur.