HOUSING AUTHORITY FOR LA SALLE COUNTY, Plaintiff-Appellant, *v.* YOUNG MEN'S CHRISTIAN ASSOCIATION OF OTTAWA, Defendant-Appellee.—(Robert Allen, Intervening Defendant-Appellee; The City of Ottawa, Intervening Petitioner-Appellee; Housing Authority for La Salle County *et al.*, Respondents-Appellants.)

Third District   Nos. 82—161, 82—127 cons.

Opinion filed January 13, 1983.

HEIPLE, J., dissenting.

George Mueller, of Hoffman, Mueller & Creedon, of Ottawa, for appellant Housing Authority for La Salle County.

James Lanuti and Paul V. Martin, both of Lanuti, Martin & Lanuti, of Ottawa, for appellee and appellant Young Men's Christian Association of Ottawa.

Warren, Hayner & Baxter, of Ottawa, for appellee City of Ottawa.

Barton & Sorokas, of Marseilles, for appellee Robert Allen.

JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Housing Authority for La Salle County (hereinafter Housing Authority) appeals from the entry of summary judgment against it, and for the defendant Young Men's Christian Association of Ottawa (hereinafter YMCA) in this title dispute case. The court determined that the plaintiff's action was barred by the doctrine of collateral estoppel, based upon a prior suit in Federal district court involving the Housing Authority's and the YMCA's predecessors in title and the property in dispute in the case. The Housing Authority appeals from the entry of summary judgment and argues (1) that the issues involved in the prior suit were not sufficiently similar so as to support a bar by collateral estoppel in this suit; (2) that collateral estoppel does not apply because the judgment in the prior suit was based upon a consent agreement; and (3) that equitable principles outweigh the technical requirements of the doctrine and the interests of justice dictate that the doctrine not be applied, and the parties be given a full opportunity to litigate their dispute.

The record reveals that the Housing Authority filed the instant suit against the YMCA in 1981, alleging that the YMCA had commenced construction of a parking lot, a portion of which encroached upon the property of the Housing Authority. A temporary restraining order was entered and further construction halted, pending resolution of the case. An amended complaint asked the court to quiet title to the disputed real property. Both counts of the amended complaint at issue herein alleged ownership of the property by the Housing Authority, pursuant to previous deeds and chain of title. The YMCA filed an affirmative defense, alleging that ownership to the disputed property had been previously determined by the District Court of the United States, Northern District of Illinois, in case N.40531, United States v. Elizabeth Wirtz et al., a decision handed down on November 21, 1932. The YMCA also filed a counterclaim in the instant action, to

quiet title. Attached to the pleadings filed by the YMCA was a copy of the United States v. Wirtz decision. United States v. Wirtz was an action brought by the United States against a number of landowners along the Fox River, for the condemnation of flood plain easements, and for the fixing of compensation for the condemnation.

The petition by the government in United States v. Wirtz set forth the United States' powers of condemnation, the fact that the Attorney General had been unable to satisfactorily approve title due to its confused state, and the existence of outstanding and adverse claims to the real estate. It was specifically set forth in the petition that the First Trust Company of Ottawa, Illinois, the YMCA's predecessor in title, claimed legal title to part of the real estate designated as Tract No. 0-20 to 0-25, under a specified warranty deed, duly recorded. Also specifically set forth was that Charles and Ella Deenis, the Housing Authority's predecessors in title, claimed legal title to part of the real estate designated as Tract No. 0-20 to 0-25, under a different specified warranty deed. In addition, the petition sets forth the fact that this property, claimed by both predecessors in title, was encumbered by a lien for the 1931 general taxes. A map showing the property was also attached. In the Wirtz suit, the Deenises were personally served with summons in the action, but they made no appearance and a default judgment was entered against them. The First Trust Company, YMCA's predecessor in the action, appeared. The judgment order reveals that the First Trust Company filed a stipulation, waiving its right to trial by the jury, and submitted the matter to the trial court judge. In the judgment order, the trial court made a specific finding, "upon the record herein and the evidence presented, *** that the First Trust Company of Ottawa, Illinois, is seized with fee simple title to the real estate," being the property again in dispute in the instant case. Compensation was set at $600 by the court in United States v. Wirtz, as the value for the flood plain easement. There is no dispute between the parties in the instant case that the property covered in the United States v. Wirtz order is the same as is now claimed by them, as successors in title to the First Trust Company and the Deenises.

The decision by the court in United States v. Wirtz was thereafter recorded at the La Salle County Recorder's office, indicating the judicial determination that title to the property was held by the First Trust Company. The YMCA took title to the property in 1956, by warranty deed, and the Housing Authority took title to their property in 1962.

The trial court, on defendant YMCA's motion for summary judg-

ment, supported by affidavit and certified copies of the petition and order in the United States v. Wirtz case, entered judgment for the YMCA, based upon application of the doctrine of collateral estoppel. An appeal was taken by the Housing Authority.

■ The basic rules with respect to the doctrine of collateral estoppel were ably set forth in *Kramer v. Chicago Title & Trust Co.* (1979), 69 Ill. App. 3d 1015, 1018, 387 N.E.2d 1105:

"Estoppel by verdict or collateral estoppel is an extension of the doctrine of *res judicata.* [Citation.] It is based on the principle that a question once adjudicated by a proper court is to be considered as finally settled and conclusive on the unsuccessful parties. [Citation.] Estoppel by verdict or collateral estoppel is applicable even where the parties are not arrayed on opposite sides in prior litigation or formal issues have not been drawn up between them. [Citations.]" (See also *Creeco Co. v. Northern Illinois Gas Co.* (1966), 73 Ill. App. 2d 218, 222, 219 N.E.2d 257.)

The doctrine operates as a bar, to parties and their privies, and is applied if the party against whom it is raised actually litigated the matter or had the opportunity to litigate the matter in a former action. (*In re Marriage of Donnellan* (1980), 90 Ill. App. 3d 1032, 1035-36, 414 N.E.2d 167.) Collateral estoppel applies as a bar to relitigation where the same parties or their privies attempt to relitigate an issue that was previously decided by a court of competent jurisdiction, even though the cause of action was different. The parties agree on the basic principles to be applied. Application to the facts is the crux of the dispute on this appeal.

■ In the instant case, while the YMCA's and the Housing Authority's predecessors in title were both arrayed as codefendants in the prior United States v. Wirtz action, their actual adversity with respect to the real estate was sufficiently set forth. The pleadings in United States v. Wirtz stated that both predecessors in title, by virtue of their chain of title, claimed part of the property identified as Tracts 0-20 to 0-25, which is the same property at issue in the instant case. The pleadings, setting forth the dual claims, pursuant to chain of title, set forth an adversity between the parties. Furthermore, the question of title to the disputed property was at issue in the previous litigation, for the district court's jurisdiction over condemnation proceedings of necessity carries with it the power to determine who, among competing claimants, owns the land. (*United States v. 1629.6 Acres of Land* (3d Cir. 1974), 503 F.2d 764, 766.) It is evident that the government, in the United States v. Wirtz action, recognized the respective chains

of title resulting in competing claims for the property, as between the parties' predecessors in title, and that those claims needed resolution in the condemnation action. Both the Deenises and First Trust Company were parties in the previous action. The fact that the Housing Authority's predecessors in title, the Deenises, chose not to defend that action does not insulate them from operation of the doctrine of collateral estoppel. Their claim was before the court, and the fact that they chose not to litigate, thereby forfeiting their opportunity to pursue it, does not affect the bar set up by collateral estoppel. The question was before the court in United States v. Wirtz, the predecessors in title were before the court, and a determination of title, based upon the record, was made. Contrary to the Housing Authority's assertions, we find, as did the trial court, that the requisite specific adversity existed in United States v. Wirtz, that the court therein had the power to determine title rights to the property between parties in the case, and that it did in fact determine the title rights to the property. There was a specific finding that the YMCA predecessor in title, the First Trust Company, was seized with fee simple title to the real estate. Had the Deenises not defaulted, but stood to litigate the matter, they could have asserted their claim to the property. They had their opportunity to do so, but chose not to do so. Therefore, they, and their successors in title, are barred, under the doctrine of collateral estoppel, from seeking another opportunity to litigate the question of title, determined in 1932 by the Federal district court.

■ We reject the Housing Authority's assertion that the United States v. Wirtz decision was a consent judgment, without effect as a bar under the doctrine of collateral estoppel. The difficulty with the argument is not the proposition of law, but rather its attempted application in the instant case. The record reveals that the stipulation entered by the First Trust Company in United States v. Wirtz was a waiver of its right to a jury trial. The judgment order, apart from such stipulation, indicates that the court made findings of fact in the case, based upon the evidence in the record, that the First Trust Company was seized with fee simple title to the real estate. The Housing Authority has not demonstrated that the judgment was by consent decree.

■ The final argument by the Housing Authority is that collateral estoppel, as an equitable doctrine, is to be utilized by the court in its sound discretion and as the interests of justice require, and that, in the instant case, the interests of justice require that it not be applied. The basis for this argument is the Housing Authority's contention that they deserve their day in court on the title question. We dis-

agree.

As noted previously, the Housing Authority's predecessors in title had an opportunity to litigate the question of title, as against the YMCA's predecessor in title, in 1931, in a suit in Federal court wherein the adverse claims of each were put forth. As a successor in title to the Deenises, the Housing Authority does not have a second opportunity to litigate the question previously determined. The Deenises had the opportunity, chose not to litigate, and there was a judicial determination of title, duly recorded, that the YMCA's predecessor had title. The judicial determination, in the form of the United States v. Wirtz decision, was recorded in 1932 at the recorder's office in La Salle County, and served as notice to all subsequent purchasers of the property determination. The YMCA took title in 1956 and the Housing Authority in 1962. It is a long standing rule in Illinois that purchasers of real estate are chargeable with notice of what appears on record concerning chain of title.

Under the circumstances, we find that the trial court did not abuse its discretion in applying collateral estoppel in the instant case. The interests of justice do not require a reversal of that action, so that the Housing Authority be given a chance to relitigate the question previously determined.

Some comment is necessary regarding the concerns of the dissent. The dissent's speculations about the attitudes, thought processes, motivations and financial capabilities of the Deenises are interesting as are the less favorable speculations concerning the trust company's attitudes and motivations. They are interesting speculations, but they are without foundation in the record. The record, with which we are limited in our review of cases, indicates that Charles and Ella Deenis were notified, by summons, of an action in which it was alleged that there were conflicting claims to property belonging to them, for which the government wished an easement. They were notified and given an opportunity to assert their claim, but they defaulted. For what reason, we may only speculate. The facts are that they were made parties, given an opportunity to litigate the disputed claim, and did not do so.

The dissent makes much of the modest amount involved in the prior suit. However, 50 years have passed since the 1932 litigation, and while $600 may now be a small sum to some people, in 1932, for many many people, it was a small fortune. There is no basis for the assertion that the $600 amount was a *de minimis* sum in 1932, not warranting hiring an attorney to pursue. Even assuming, *arguendo*, the premise of the dissent, there would remain the problem of where

to limit the amount when applying collateral estoppel. If $600 is not worth fighting over, is perhaps $750, or $1,000. We are all left with no guidance.

As a final matter, while the dissent's speculations focus upon the Deenis couple, it is the Housing Authority involved in this litigation, and so far as the equities are concerned, it must be noted that they took title in 1962, long after the United States v. Wirtz decision had been recorded in the recorder's office.

For the reasons stated, the decision of the circuit court of La Salle County is affirmed.

Affirmed.

BARRY, P.J., concurs.

JUSTICE HEIPLE, dissenting:

I agree with the majority opinion insofar as it makes a technically correct application of the doctrine of collateral estoppel. However, I cannot concur in the result reached since I believe that there are equitable considerations which prevent application of the doctrine in this case.

In September of 1981, the defendant, YMCA of Ottawa, had commenced construction of a parking lot which allegedly encroached on the property of the plaintiff, Housing Authority for La Salle County. The plaintiff filed a complaint seeking injunctive relief as well as damages for the defendant's alleged encroachment. Since ownership of the property allegedly encroached upon was in dispute, the plaintiff amended its complaint to ask that title be quieted. The defendant filed an affirmative defense alleging that in 1932, a Federal district court had determined that the defendant's predecessor in title was the owner of the disputed property. The defendant then moved for summary judgment on the ground that the plaintiff was barred by collateral estoppel from relitigating the question of ownership. The court granted the defendant's motion and the plaintiff appeals.

Collateral estoppel is an equitable doctrine to be exercised by the court in its sound discretion and as the interest of justice requires. A prior suit should not be used to bar a second action when one of the parties to the prior suit did not have a full and fair opportunity to litigate. (*Adams v. Pearson* (1952), 411 Ill. 431, 440.) In the present case, a 1932 condemnation action is said to bar the plaintiff from pursuing a quiet title action in 1982. The circumstances surrounding the 1932 action make it unfair to give that decision conclusive effect

years later.

Ella and Charles Deenis were predecessors in title to the Housing Authority, the current plaintiff. The First Trust Company of Ottawa was the predecessor in title of the defendant YMCA. These parties were named as codefendants in an action brought by the United States to compensate landowners pursuant to government condemnation of riverfront land for flood plain use. According to the government's petition, the Trust Company and Ella and Charles Deenis all claimed ownership of the same land.

The Federal district court had jurisdiction to try title to the land in order to determine whom to pay and how much. The amount at stake was $600. It should also be borne in mind that the government was condemning flood rights and was not acquiring fee title to the real estate. The owners weren't threatened with the loss of any land. What was at stake was the government's potential right to cause flooding over this land in the future. The Federal litigation would establish the right of the government to cause such flooding and the compensation would be fixed at that time rather than later when and if the flooding occurred. In view of the sum of money involved, which was almost *de minimus,* and in view of the nature of the proceeding, it is easy to see how adjacent landowners could take a fatalistic attitude about the entire proceeding and do nothing other than take the small sum that the government would pay for flood rights. The amount involved hardly warranted hiring an attorney to even check the proceedings and appear in court. It is unlikely that such proceedings would be viewed by landowners up and down the river as trying boundary lines between them. It would not be unreasonable to expect most people to do nothing. That is precisely what Ella and Charles Deenis did. Nothing. It was not readily apparent from the context of the action that conclusive findings of ownership would be made that would be binding as between adjacent property owners who were all defendants to the proceeding. Thus, Ella and Charles Deenis were defaulted.

First Trust Company, however, aware of the potential ramifications of the action and with the means to contest the matter, appeared in court with counsel. First Trust took the opportunity to establish a claim of title to the property under conditions where it was unlikely to meet opposition.

Even though Ella and Charles Deenis had the opportunity to litigate title in 1932, the circumstances were not such as to indicate that they should do so. It would be unfair and unjust to bind them collaterally by their inaction. At best, the 1932 action placed an additional

cloud on the title to the property in question. The plaintiff should be allowed to remove that cloud free of collateral estoppel.

Collateral estoppel is not a rigid doctrine and should be applied only as fairness and justice require under the circumstances of each case. Offensive use of the doctrine should be subject to even closer scrutiny. (*Fred Olson Motor Service v. Container Corp.* (1980), 81 Ill. App. 3d 825, 830.) Unlike the 1932 action, there are significant interests at stake in the present case which both sides are obviously aware of. Both parties have sharply defined adverse interests and possess the means to fully litigate all issues. Under these circumstances, justice demands that the doctrine of collateral estoppel should be set aside and the plaintiff's action be allowed to proceed. Since the majority has concluded that the plaintiff's action is barred, I must respectfully dissent.