In re the Marriage of Charles E. COAKLEY, Petitioner, Respondent (C8-86-728), Appellant (C2-86-1003, C8-86-1331),

v.

Mary C. COAKLEY, Appellant (C8-86-728), Respondent (C2-86-1003, C8-86-1331).

Nos. C8-86-728, C2-86-1003 and C8-86-1331.

Court of Appeals of Minnesota.

Feb. 10, 1987.

Review Denied April 23, 1987.

Ronald B. Sieloff, Michael D. Dittberner, St. Paul, for Charles E. Coakley.

Richard D. Goff, St. Paul, for Mary C. Coakley.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

This appeal examines a stipulated dissolution judgment that permitted the trial court to reopen the judgment if Charles Coakley were to petition for a discharge of debts in bankruptcy. The trial court refused to disturb the property division, finding the stipulated provision unenforceable in that regard. The court reopened the judgment on the issues of child support and maintenance and increased each of those

awards after reviewing the parties' changed circumstances. We affirm.

## FACTS

Appellant Charles Coakley and respondent Mary Coakley [1] were married in 1965 and have four children, ages 11 to 17 years. Appellant supported the family with his earnings as a pilot for Northwest Airlines. Respondent did not work outside the home except during the first year of marriage and a six month period when appellant was on strike.

### I. Dissolution

The parties separated in 1981. A temporary order granted Mary Coakley custody of the children and use of the homestead. Charles Coakley was ordered to make monthly payments of $500 for child support and $500 for maintenance. As additional support for the family, appellant was ordered to make the monthly mortgage, car, and other home-related payments.

In June 1983, the parties' marriage was dissolved by stipulated judgment. Appellant's monthly child support was set at $700, increasing over five years to $900. He was also ordered to pay progressively increasing monthly maintenance for six years, totaling $129,600. In addition, appellant was ordered to pay respondent nearly $1900 in accrued support arrearages plus $2000 for attorney fees Mary Coakley incurred attempting to enforce the temporary support order.

The parties' only significant marital assets were appellant's pension and their homestead. The court awarded appellant the $41,200 pension and ordered him to pay respondent $15,893 as a property settlement. However, the court permitted appellant to defer payment for two years, and to then pay respondent in 24 monthly installments.

The court ordered the parties to sell the house. Beginning June 1, 1983, and until its sale, they were to share the mortgage and related expenses equally. The sale proceeds were to be divided equally after payment of the mortgage balance, sale costs, and $21,900 in nonhomestead debts. In addition, the mortgage arrearages that appellant had accrued prior to June 1 were to be credited to respondent from appellant's share of the proceeds.

### II. Bankruptcy

At the time of the dissolution, appellant Charles Coakley had already filed for relief under Chapter 13 of the federal bankruptcy laws. The judgment provided that if appellant were to amend his petition to one for Chapter 7 liquidation relief, the court would retain jurisdiction and either party could move for a reopening of the judgment on the issues of property distribution, maintenance, and support.

Two months later, appellant petitioned for Chapter 7 relief. His debts were discharged, including the $15,893 property settlement payment and his liability on the nonhomestead debts that were to be satisfied from the homestead sale proceeds.

The parties did not sell the homestead until April 1984, after appellant's bankruptcy proceedings were complete. Moreover, only $3650 remained after payment of the mortgage and sale costs. Of the nonhomestead debts, only one of $310 was paid; respondent received the remaining balance of $3340. Appellant also failed to pay respondent the $12,400 in mortgage and tax arrearages that had accrued prior to June 1, 1983. Additional arrearages that accrued between June 1, 1983 and April 1984, for which no order of repayment had been made, totaled $7074.

Appellant's bankruptcy negatively affected respondent's financial circumstances by more than $43,000: (1) She lost her right to collect the $15,893 property settlement, (2) she suffered increased debt cost of $7635, calculated by considering her unexpected liability for all rather than half of $15,270 debt ($18,920 minus $3650 distributed to respondent) that was to be paid

---

1. This opinion addresses three consolidated appeals, one brought by Charles Coakley and two by Mary Coakley. For purposes of simplicity, and because Charles Coakley raises the primary issue, we refer to Charles Coakley as appellant and Mary Coakley as respondent.

from the home sale proceeds, and (3) repayment was not made for her mortgage and tax expenses of $12,400 and $7074.

## III. Proceedings to Reopen Judgment

Because of appellant's bankruptcy discharge, both parties moved to reopen the judgment in accordance with the stipulated provision. The trial court held an evidentiary hearing and issued its findings and order in December 1985.

### A. *Property*

The court refused to reopen the property settlement, stating that (1) property awards are final and not subject to modification except where they are the product of mistake or fraud and (2) the provision was invalid as a "pre-bankruptcy waiver of rights," enforceable only if found to be in the nature of maintenance or support.

### B. *Maintenance and Support*

The trial court granted the motions to reopen the maintenance and support provisions, finding the stipulation in this regard was enforceable as a waiver of rights in the nature of maintenance or support. However, the court also found that a modification was warranted independent of the reopening provision because a change in circumstances had occurred since 1983 that made the original maintenance and support orders unreasonable and unfair. The court ordered that appellant pay $126,000 in maintenance over the next six years in addition to $58,400 already paid in the first 30 months of the initial six-year maintenance period. The court also applied the child support guidelines to increase appellant's monthly child support obligation to $2340, approximately 34 percent of his net monthly income.

In support of its increased awards, the trial court found that appellant's gross annual income had increased by nearly 28 percent to $127,668, that the bankruptcy had relieved him of substantially all of his prejudgment debts, and that his net monthly income of $6848 enabled him to meet his reasonable monthly expenses of $3650 as well as the maintenance and child support payments without suffering undue hardship.

The court further found that appellant's bankruptcy had caused respondent to suffer the loss of the $15,893 property settlement and a substantially increased debt liability. The court found that respondent and the children had reasonable monthly expenses of $5539, not including any monies for respondent's additional debt obligations, and that they did not have any resources other than maintenance and support with which to meet those expenses.

### C. *Money Judgment—Arrearages—Attorney Fees*

The court also entered a money judgment against appellant for $14,400, based on its finding that neither the $12,400 in support-related prejudgment mortgage and tax expenses [2] nor the $2000 in support-related attorney fees had been discharged in bankruptcy. Finally, the court ordered appellant to pay respondent $5000 for her postjudgment attorney fees.

Charles Coakley appeals from the money judgment and challenges the trial court's determinations on maintenance and support; Mary Coakley disputes the trial court's refusal to reopen the property settlement.

### ISSUES

1. Did the trial court properly refuse to reopen the property settlement?

2. Did the trial court properly reopen the maintenance and child support awards?

3. Is the amount and duration of the maintenance and support modifications an abuse of discretion?

4. Were the prejudgment mortgage arrearages discharged in bankruptcy?

---

**2.** The original judgment did not specifically provide for the repayment of postjudgment mortgage and tax obligations. Thus, the trial court did not order appellant to pay respondent the $7074 in postjudgment arrearages in addition to the $12,400 in prejudgment arrearages.

5. Were the prejudgment attorney fees discharged in bankruptcy?

## ANALYSIS

■ 1. In rare circumstances, parties to a dissolution may seek postjudgment judgment relief from the trial court with regard to the property settlement. *See Kerr v. Kerr*, 309 Minn. 124, 126, 243 N.W.2d 313, 314 (1976) ("property divisions are final and are not subject to modification except where they are the product of mistake or fraud"); Minn.Stat. § 518.64, subd. 2 (Supp.1985) ("all divisions of real and personal property * * * shall be final, and may be revoked or modified only where the court finds the existence of conditions that justify reopening a judgment under the laws of this state").

Mary Coakley argues that the case of *Sullivan v. Sullivan*, 393 N.W.2d 521 (Minn.Ct.App.1986) permits the reopening of a property settlement where the judgment expressly provides for it. In *Sullivan*, the original judgment included an order for child support and also stated that if the obligor chose to sell certain real estate he was to purchase life insurance for the child with the proceeds. *Id.* at 522. After the obligor manifested a clear intent not to make any child support payments, however, the trial court ordered him to sell the real estate and place the proceeds in trust for the payment of child support. *Id.* This court affirmed, holding that:

> The parties intended that appellant hold the property as security for the benefit of the child. * * * When the child was deprived of necessary support, the property held for the security was needed immediately. The trial court thus ordered disposition of the property for the benefit of the child pursuant to the agreement between the parties.

*Id.* at 523.

■ The rationale in *Sullivan* does not permit the reopening of the property settlement here. The property division changes considered here did not relate to support for children, but were aimed at offsetting the consequences of bankruptcy proceedings. Property settlements are dischargeable in bankruptcy, and postdissolution orders may not later circumvent a federal bankruptcy discharge of a property settlement. *Stolp v. Stolp*, 383 N.W.2d 409, 412 (Minn.Ct.App.1986). Here, the imposition of a new property settlement upon appellant would deny him the relief granted him by the bankruptcy.

■ Similarly, a waiver of the right to discharge debts under the Bankruptcy Act, executed prior to bankruptcy, is enforceable only if in the nature of an obligation for maintenance or support. *In re George*, 15 B.R. 247, 249 (N.D.Ohio 1981). As the trial court found, bankruptcy laws as well as Minnesota's laws on the finality of property settlements prevent respondent from recouping losses suffered through a bankruptcy discharge.

2. Appellant argues the trial court erred by determining the maintenance and support awards de novo. The trial court concluded it was not constrained by the original purpose of the awards because of the judgment's own provision for reopening. The stipulated judgment provided that the maintenance and support orders could be redetermined if appellant petitioned for Chapter 7 bankruptcy relief. Unlike the reopening of the property settlement, this provision is enforceable because it is in the nature of maintenance and support. *See George*, 15 B.R. at 249.

■ Moreover, the trial court need not rely on the stipulation because trial courts retain their jurisdiction to amend maintenance and child support awards as the "circumstances might require." *Jones v. Jones*, 300 Minn. 182, 186, 220 N.W.2d 287, 290 (1974). *See* Minn.Stat. §§ 518.18, 518.-57, 518.64 (1984 & Supp.1985).

The trial court found that its maintenance and support changes were appropriate both under the judgment provision for reopening and under the statutory modification statute, Minn.Stat. § 518.64, subd. 2 (Supp.1985). The court made independent findings using the standards contained in the statute.

■ An obligation to pay maintenance or child support may be modified upon a showing that a substantial change of circumstances has occurred that makes the original order unreasonable and unfair. *Id.* The trial court's determination must be supported by findings that reveal its consideration of the factors listed in Minn.Stat. § 518.64. *Moylan v. Moylan,* 384 N.W.2d 859, 865 (Minn.1986).

■ The trial court made detailed findings on changed circumstances and concluded that appellant's increased income and the shift of debt obligations onto respondent constituted a substantial change. The initial stipulation to reopen the judgment illustrates a mutual expectation that a significant change in circumstances might occur; when the change did occur, it rendered the original orders unreasonable and unfair. Appellant earns over $127,000 per year while respondent is engaged in care for the children and the attempt to enter the job market after nearly 20 years. Appellant has been released from his debt obligations and has thereby done damage to the financial circumstances of respondent. The trial court's findings are supported by the evidence.

■ 3. The trial court must also make particularized findings supporting the amount of modification granted. *Rosenfeld v. Rosenfeld,* 311 Minn. 76, 82, 249 N.W.2d 168, 171 (1976) (particularized findings promote the use of statutory standards, explain the trial court's decision for the parties, and facilitate meaningful appellate review). The dissolution statute outlines the specific factors to be considered in both maintenance and child support cases. *See Moylan,* 384 N.W.2d at 863 (in all child support cases not involving public assistance, the trial court must make specific findings of fact on statutory factors); Minn.Stat. § 518.551, subd. 5(b) (1986) (now requiring consideration of factors other than guideline chart); *Leach v. Leach,* 356 N.W.2d 378, 379 (Minn.Ct.App.1984) (trial court must consider factors relevant to maintenance awards, outlined in Minn.Stat. § 518.552, subd. 2).

The trial court's findings reveal it considered the appropriate statutory factors in setting the amount and duration of both the maintenance and support modifications. The court made findings on the income and needs of appellant, respondent, and the children. The findings reject some of appellant's alleged expenses as inflated and explain the basis for that conclusion. They also address the standard of living enjoyed by the family prior to the dissolution and recognize the children's right to benefit from the increased income of their father. *See* Minn.Stat. § 518.17, subd. 4(c) (1984). The trial court's findings are supported by the evidence and support the court's decision to apply the guideline chart.

Additional findings relevant to respondent's need for maintenance scrutinize the employment and living situations of both parties. These findings accurately reflect the evidence presented and support the court's decision to extend the maintenance award for 30 additional months.

■ Appellant also claims the court erred in extending the duration of child support to age 20 from age 18 or the child's graduation from high school, emancipation, marriage, or death. The modification statute provides that child support provisions terminate by the emancipation of the child "unless otherwise * * * expressly provided [for] in the decree * * *." Minn.Stat. § 518.64, subd. 4 (1984). The trial court's discretion to continue support until a child reaches age 20 is contemplated by the governing statute.

■ 4. Appellant argues that the trial court erred in ordering him to pay the $12,400 in mortgage and tax arrearages because his bankruptcy discharge included his homestead mortgage debt. Citing *Donnellan v. Donnellan,* 90 Ill.App.3d 1032, 46 Ill.Dec. 445, 414 N.E.2d 167 (1980), appellant claims that the res judicata effect of a bankruptcy decision bars respondent from raising a claim for the unpaid mortgage payments. *Donnellan* held that a bankruptcy court's finding that debts arising from the parties' stipulated agreement

were in the nature of a property settlement and not support were conclusive, thus barring a state court action seeking payment of the debts. *Id.* at 1038, 46 Ill.Dec. at 450, 414 N.E.2d at 172.

Appellant's reliance on *Donnellan* is misplaced. The bankruptcy court here made no finding regarding the nature of the mortgage arrearages. Appellant's petition did not separate the $12,400 out from the rest of the mortgage balance and there is no indication that the bankruptcy court was aware of appellant's obligation to provide the family with additional support by paying their home expenses. Res judicata cannot be invoked because the issue was never litigated by the bankruptcy court.

 Moreover, the state court's original order noted that appellant's obligation to pay the homestead costs was "as and for additional child support and spousal maintenance." That the payments are properly viewed as support and are therefore nondischargeable in bankruptcy is shown by numerous cases holding that the maintainance and support of a family " 'includes the obligation to keep a roof over their heads.' " *Jones*, 300 Minn. at 187, 220 N.W.2d at 290 (quoting *Poolman v. Poolman*, 289 F.2d 332, 335 (8th Cir.1961)). *See also In re Brown*, 36 B.R. 103 (D.Kan. 1983) (debtor's assumption of debt owed by him and his wife on mortgage loan was in nature of support and not dischargeable); *In re Cribb*, 34 B.R. 862 (D.S.C.1983) (former husband's assumption of second mortgage on home in which his former wife and child were to live was a nondischargeable debt); *In re Eisenberg*, 18 B.R. 1001 (E.D. N.Y.1982) (debt owed by debtor to former wife was a liability in nature of maintenance, and nondischargeable). The trial court properly entered judgment against appellant upon his failure to reimburse respondent for mortgage and tax expenses.

5. Appellant also contends that the trial court erred in entering judgment for the $2000 in attorney fees, again arguing that this debt was discharged by the bankruptcy. In a preliminary order, the trial court had found that the bankruptcy had discharged the debt, but later reversed that ruling without explaining the basis for its decision.

 The basis for the trial court's ultimate ruling arises from the law governing a bankrupt's debts that are in the nature of support or maintenance: Attorney fees incurred while attempting to enforce support and maintenance orders are not dischargeable in bankruptcy. *See Matter of Steingesser*, 602 F.2d 36, 38 (2nd Cir. 1979) (test for whether wife's debt to attorney for fees is dischargeable is whether debt had its genesis in husband's failure to provide support and in husband's continuing obligation to support his wife and child). The trial court properly concluded that the attorney fees incurred while attempting to enforce the temporary support order were not discharged in bankruptcy and properly entered judgment against appellant for those fees.

### DECISION

The trial court properly found the provision for the reopening of the property settlement is unenforceable under federal bankruptcy law as well as Minnesota dissolution law. The court properly determined that a change in circumstances warranted an increase in support and maintenance, and its findings on the factors relevant to the appropriate amount of modification are adequate and supported by the record. Because appellant's debts for mortgage payments and attorney fees were in the nature of support for the family, the trial court properly found that these debts were not discharged in bankruptcy.

Affirmed.